A93A0833. HALL et al. v. WORLD OMNI LEASING, INC.
(433 SE2d 297)

BEASLEY, Presiding Judge.

David and Vivian Hall appeal from the grant of summary judgment to World Omni Leasing, Inc. ("World") in the suit brought against them by World for a deficiency after their leased car was repossessed.

1. In their sole enumeration of error, they contend the grant of summary judgment was error because genuine issues of material fact exist. Although in the enumeration of error they do not explicitly list the issues they allege remain for jury determination, their contentions are discernible from the arguments presented and the record. World's argument that the enumeration is insufficient does not consider OCGA § 5-6-48 (f), which directs that "[w]here it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, . . . what errors are sought to be asserted upon appeal, the appeal shall be considered in accordance therewith notwithstanding that the . . . enumeration of errors fails to enumerate clearly the errors sought to be reviewed." This provision is in conformity with the overriding principle embodied in the legislative statement of the purpose of the Appellate Practice Act "to bring about a decision on the merits of every case appealed." OCGA § 5-6-30. See *Contractors Mgmt. Corp. v. McDowell-Kelley, Inc.*, 136 Ga. App. 116, 117-118 (1) (220 SE2d 473) (1975). Of course, lack of clarity always creates a risk of miscommunicating to the court a party's complaint on the merits of its position.

2. The Halls contend because there was no meeting of the minds, a material issue of fact remains whether a valid, enforceable contract was created. In opposition to World's motion for summary judgment,

the Halls submitted their joint affidavit setting forth their version of the facts: On October 27, 1989, they attended an automobile tent sale in Macon. They were approached by a salesman from Regency Toyota, who urged them to purchase a new vehicle and trade their present vehicle, a 1988 Volkswagen Jetta. They informed the salesman they would be interested in purchasing a 1989 Toyota Camry provided they were given a fair allowance on the Volkswagen and their monthly payments did not exceed $300 for a term not greater than 60 months.

The salesman assured them this could be done, and they signed a purchase order in which some numbers were filled in, but the actual amounts involved in the trade were left blank. They also signed several other documents, which the salesman represented to them dealt with financing the car. The salesman had them sign these documents in blank because he said the computers were down. He told them he would contact them later to complete the details but never did so. The salesman positioned the documents for their signatures so as to reveal only the bottom portions containing the signature lines, and they were led to believe that they were purchasing the car.

They made a down payment at the time they signed the blank documents and made a payment in November, still unaware that they had transacted for anything other than a purchase. About the first of December their insurance agent mentioned to them that the car appeared to be leased, but the Halls assured him that was not the case. Sometime in December they received a bill from World, and they contacted the manager at Regency Toyota, who told them it was a straight purchase but was set up like a lease. This satisfied them.

Shortly thereafter, their insurance company informed them that the car definitely was leased. They again contacted Regency's manager, who this time told them there was nothing he could do; they should have discussed this with the salesman, who was no longer employed by the dealership. The Halls informed World and Regency that they could pick up the car, and that they would consult an attorney. They continued to get bills and statements until the car was repossessed in March.

In support of its motion for summary judgment, World presented the affidavit of Christine Frohock, its Customer Account Supervisor, who averred that she was the custodian of World's business records and authenticated attached documents, including the lease, notices of repossession, and various other documents establishing that the Halls had defaulted on a vehicle lease agreement for a 1989 Toyota Camry, and that a deficiency balance was owed after the car was repossessed

and sold.[1] Citing *Fore v. Parnell-Martin Cos.*, 192 Ga. App. 851 (386 SE2d 723) (1989) as authority, the court granted World's motion for summary judgment on the ground that no genuine issue as to any material fact existed and World was entitled to judgment as a matter of law.

The Halls appear to argue that because they mistakenly believed they were signing financing documents for a purchase, as well as because they signed documents in blank, the lease agreement is unenforceable because no meeting of the minds occurred. However, when the Halls signed the documents they were completely aware that they were blank as to important terms. They made payments on a contract they purportedly did not see, even when the salesman failed to get back to them to inform them of the terms that were blank when they signed the instruments. " 'If a writing is signed with blanks left to be filled in by the other party, the person signing is bound by it. [Cit.]' [Cit.]" *Fore*, supra at 853 (2).

The Halls' contentions are identical to those addressed in *Fore*, which held that "[i]t is the duty of contracting parties to inform themselves with reference to the subject matter about which they desire to contract; if they fail to do so and a mistake is made owing to their own ignorance and failure to inform themselves, then any injury results from their own conduct. Relief is not available on the basis of a unilateral mistake in the absence of fraud or inequitable conduct or other special circumstances." (Citations and punctuation omitted.) Id. at 852 (1).

"Where one who can read signs a contract without apprising himself of its contents, otherwise than accepting representations made by the opposite party, with whom there exists no fiduciary or confidential relation, he can not defend an action based on it, or have it canceled or reformed, on the ground that it does not contain the contract actually made, unless it should appear that at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by some misleading artifice or device perpetrated by the opposite party, amounting to actual fraud as would reasonably prevent him from reading it." (Citations and punctuation omitted.) *Green v. Ford Motor Credit Co.*, 146 Ga. App. 531, 532 (1) (246 SE2d 721) (1978).

Nothing in the record suggests that the Halls cannot read, and no fiduciary or confidential relationship existed between the Halls and

---

[1] The affidavit of Frohock originally submitted was an unsigned and unnotarized conformed copy, and based on that affidavit the court denied the motion for summary judgment. World moved for reconsideration and for leave to file a proper affidavit. Leave was granted, a signed and notarized affidavit was filed, and summary judgment was granted on reconsideration based on the new affidavit.

118

the salesman. Even accepting the Halls' allegations that the contract was presented for their signature in a manner that revealed only the signature portions, they do not allege that the salesman refused to allow them to examine the contract after they requested to do so. On the contrary, it is apparent that they made no effort to read it. This is not such "misleading artifice or device" as amounts to fraud. See *Delta Chevrolet v. Wells*, 187 Ga. App. 694, 695 (1) (371 SE2d 250) (1988). Moreover, the reasonableness of their belief that the lease agreement was a financing agreement for a purchase is undermined by the fact that the words "lessor," "lessee" and "co-lessee" are pre-printed clearly on the very signature lines they admit seeing.

3. Even were we to assume that the elements of fraud were established, the Halls failed to rescind the lease contract and return the car when, in December, they first learned or should have learned that the car was leased. Moreover, although the Halls informed World that it "could come pick up the vehicle," which arguably could be construed as an attempt at restoration of the benefit of the contract, their conduct following that notification was inconsistent with such a construction. They continued driving the car until March, increasing the car's mileage to approximately 13,000 miles. " 'A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value.' OCGA § 13-4-60." *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883, 886 (354 SE2d 210) (1987).

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JUNE 1, 1993 —
RECONSIDERATION DENIED JUNE 18, 1993 — 

*Robert S. Slocumb*, for appellants.
*Fred J. Hanna, Elizabeth C. Whealler*, for appellee.