A96A2522. REEVES et al. v. EDGE et al.

(484 SE2d 498)

Pope, Presiding Judge.

On September 15, 1989, Ruth R. Baxley, on behalf of Frank Reeves, Claude Reeves, Jerry Reeves and herself (hereinafter "plaintiffs"), entered into a contract with Parkhill Cemetery, Inc. (the "cemetery") for the purchase of the right of interment as to two burial lots in the perpetual care cemetery. The contract expressly provided that the right of interment was subject to the rules and regulations of the cemetery "which are now in force or which may hereafter be adopted by said cemetery." The contract also contained a merger clause stating that the "contract contains the complete agreement between the parties hereto and no agent or representative of the cemetery has any authority to make any statements, representations or agreements adding to or changing the terms and conditions herein set forth."

Later that month, plaintiffs received a deed dated September 28, 1989, conveying the right of burial in the two lots to plaintiffs' parents, Kline and Ruth E. Reeves. The deed expressly provided that the right of interment and any possession or use of the lots was "subject to all the rules and regulations of [Parkhill Cemetery, Inc.] now or hereafter adopted and placed on file in its office by said cemetery for benefit of said cemetery and the owners of the right of interment therein."

On August 5, 1991, plaintiffs' mother was buried in one of the lots, and the cemetery placed a temporary name marker at the site. Shortly thereafter, plaintiffs received a letter and brochure from the cemetery informing them about the cost of permanent markers for the grave site and installation fees. Because plaintiffs thought the cemetery's prices were too high, they decided to purchase a marker elsewhere and install it themselves. Thereafter, without first seeking approval from the cemetery, plaintiffs went to the cemetery in the early morning hours of Sunday, February 21, 1993, and installed the marker on their mother's grave. This was done in direct contravention of cemetery rules and regulations providing that all markers had to be installed by cemetery personnel, that all markers first had to be approved by the cemetery, that markers could not be installed on a Sunday without the cemetery's prior approval, and that an installation fee had to be paid to the cemetery for all markers installed at the cemetery.

When they were finished installing the marker, plaintiffs were approached by a cemetery employee who informed them that only cemetery personnel were allowed to install markers. Plaintiffs went to the cemetery office where they were told that the cemetery charged an installation fee on all markers placed in the cemetery,

and that the fee was then paid into the memorial maintenance fund established by the cemetery to ensure the perpetual care of the memorials and markers on the property. Plaintiffs were also told that if they did not pay the installation fee of $285.12, cemetery rules and regulations authorized the removal of the marker.

On February 25, 1993, the cemetery sent plaintiffs a letter once again explaining cemetery policy and the reasoning behind it and demanding payment of the $285.12 installation fee. Plaintiffs were notified that if they did not pay the fee, cemetery rules and regulations authorized the removal of the marker until payment. A second letter was sent on March 22, 1993, warning that if the fee was not paid within ten days, the marker would be removed. Plaintiffs did not pay, and the marker was removed on April 19, 1993.

Plaintiffs filed criminal charges (theft by taking) against Julian D. Edge, the president of Parkhill Cemetery, which were dismissed by the court. They then filed this civil action against Julian D. Edge and Parkhill Cemetery, Inc. ("defendants"), on December 9, 1993, seeking damages for conversion and emotional distress. Defendants filed their motion for summary judgment on June 29, 1995 and, thereafter, on August 1, 1995, plaintiffs amended their complaint to add additional counts for fraud and violation of the Georgia Cemetery Act. Defendants filed a second motion for summary judgment on December 21, 1995, addressing the additional counts raised in plaintiffs' amended complaints, and a hearing was held before the court on February 6, 1996. Additional briefs were submitted following the hearing, and plaintiffs again amended their complaint on February 28, 1996, for the stated purpose of "affirm[ing] the contract" between the parties. The trial court granted defendants' motion for summary judgment on all counts of plaintiffs' amended complaint, and plaintiffs now appeal.

1. We find the trial court correctly granted summary judgment on plaintiffs' count alleging violations of the Georgia Cemetery Act (OCGA § 44-3-130 et seq.). Pretermitting the issue of whether either defendant had, in fact, violated provisions of OCGA § 44-3-141 or § 44-3-142 as alleged by plaintiffs, we note that no person may bring an action for a violation of OCGA § 44-3-142 "more than two years from the date of the scheduled completion of the contract for sale or from the date of the sale if there is no contract for sale." OCGA § 44-3-145 (c). Furthermore, any claims brought for violations of other provisions of the Georgia Cemetery Act are also subject to the two-year statute of limitation provided for in OCGA § 44-3-145 (c) by virtue of the "catch-all" provision of OCGA § 44-3-142 (a) (3) which states: "(a) It shall be unlawful for any person: (3) To sell or offer to sell any cemetery property, burial rights, burial services, or burial merchandise in violation of any provision of this article or rule, regu-

lation, or order promulgated or issued by the Secretary of State under any provision of this article." Thus, the violations of OCGA § 44-3-141 alleged by plaintiffs in their amended complaint are considered as if they were violations of OCGA § 44-3-142 and are therefore subject to the two-year statute of limitation.

A review of the record indicates plaintiffs contracted to buy the right of interment in the two lots on September 15, 1989, and the deed, dated September 28, 1989, was delivered to them approximately two weeks later. Plaintiffs filed this complaint on December 9, 1993, over four years after receiving the deed. Accordingly, the trial court correctly determined that plaintiffs' claims for violations of the Georgia Cemetery Act were time barred.

We reject plaintiffs' argument that the statute of limitation did not begin to run until either February 21, 1993, the date when plaintiffs placed the marker on the grave or April 19, 1993, when defendants removed the marker. A deed becomes an executed contract when it is signed and delivered. It is not essential that possession should be obtained under it. *Watkins v. Nugen,* 118 Ga. 372, 373 (45 SE 262) (1903). See also OCGA § 13-1-2 (a). The contract for sale in this instance was completed in September 1989 upon delivery of the deed, and plaintiffs' complaint with respect to this claim filed in December 1993 was untimely.

We also reject plaintiffs' argument that defendants waived their statute of limitation defense because they did not raise it until the hearing on the motion for summary judgment. See *Hansford v. Robinson,* 255 Ga. 530 (340 SE2d 614) (1986). The record clearly indicates that defendants raised this affirmative defense in their amended motion for summary judgment filed on December 21, 1995, more than 30 days prior to the February 6, 1996, hearing on the motion. " 'The purpose of the requirement that affirmative defenses be pleaded is to prevent surprise and to give the opposing party fair notice of what he must meet as a defense. If it is not pleaded it is generally held that the defense is waived, but if it is raised by motion, or by special plea in connection with the answer or by motion for summary judgment there is no waiver. [Cits.]' " (Punctuation omitted.) *McFadden Business Publications v. Guidry,* 177 Ga. App. 885, 887 (1) (a) (341 SE2d 294) (1986). In this case, plaintiffs had notice of defendants' statute of limitation defense more than 30 days prior to the hearing on the motion for summary judgment. Thus, there was no waiver. *Albany Oil Mill v. Sumter EMC,* 212 Ga. App. 242 (1) (441 SE2d 524) (1994).

2. We also find the trial court correctly granted summary judgment on plaintiffs' fraud count. "The tort of fraud has five elements. These are: (1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justi-

fiable reliance by the plaintiff; and (5) damage to the plaintiff. [Cit.]" *Hanlon v. Thornton*, 218 Ga. App. 500, 501 (1) (462 SE2d 154) (1995). "For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort. [Cit.]" *Cobb County School Dist. v. MAT Factory*, 215 Ga. App. 697, 700-701 (2) (a) (452 SE2d 140) (1994).

Pretermitting the issue of whether plaintiffs can establish the first three elements of fraud in this case, we find that plaintiffs cannot establish, as a matter of law, the fourth element of justifiable reliance. "In order to prove the element of justifiable reliance, the plaintiff[s] must show that [they] exercised [their] duty of due diligence. [Cit.]" *Hanlon v. Thornton*, 218 Ga. App. at 501. "Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence. [Cits.] 'When the means of knowledge are at hand and equally available to both parties to a contract of sale, if the purchaser does not avail himself of these means, he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller.' [Cit.]" *Hartsfield v. Union City Chrysler-Plymouth*, 218 Ga. App. 873, 876 (2) (463 SE2d 713) (1995). See also *Williams v. Fallaize Ins. Agency*, 220 Ga. App. 411 (1) (469 SE2d 752) (1996).

In the case sub judice, the sole basis of plaintiffs' fraud claim is their allegation that cemetery personnel gave to plaintiffs, either at the time of sale or at some time thereafter, a condensed version of the rules and regulations of the cemetery rather than the complete set. This representation, plaintiffs argue, whether intentional or grossly negligent, constituted a suppression of a material fact and actionable fraud.

Plaintiffs' claim of fraud, however, must fail because the contract contained a clause that expressly notified plaintiffs that the right of interment in the lots was subject to the rules and regulations of the cemetery "now in force or *which may hereafter be adopted.*" (Emphasis supplied.) This provision put plaintiffs on notice that the rules and regulations originally furnished to them in 1989, or sometime thereafter, whether in condensed or complete form, were subject to modification at any time with or without notice to plaintiffs. Plaintiffs, therefore, were obligated to exercise their duty of due diligence by attempting to ascertain the cemetery's current rules and regulations prior to their installing a marker at their mother's grave in February 1993, more than three years after being furnished with the original copy. They failed to do this. Instead, the record indicates plaintiffs failed to read or notice the provisions in both the contract and deed referring to the rules and regulations and the cemetery's right to modify them; plaintiffs failed to ask the cemetery to provide

them with a complete and current copy of the rules and regulations prior to installing the marker; and plaintiffs failed to check with cemetery personnel to find out whether their contemplated actions were permitted under current cemetery rules. We find that plaintiffs' " 'blind reliance' on [defendants'] representation regarding a matter which could have been easily verified demonstrates a lack of due diligence fatal to the fraud claim. [Cit.]" *Simmons v. Fanello*, 223 Ga. App. 213, 215 (2) (477 SE2d 330) (1996).

We also note that the trial court's grant of summary judgment on plaintiffs' fraud claim was correct for two other reasons. "Georgia law traditionally provides two avenues of relief for claimants alleging fraud under these circumstances. [Plaintiffs] may affirm the contract and sue for breach of contract or rescind the contract and sue in tort for fraud. [Cit.] Accepting and retaining the benefits under the contract alleged to be fraudulent after discovering the alleged fraud constitutes an affirmance. [Cit.]" *Garcia v. Charles Evans BMW*, 222 Ga. App. 121, 122 (473 SE2d 588) (1996). Here, not only did plaintiffs elect to retain the two lots, but they intentionally amended their complaint for the sole purpose of affirming the contract. Under these circumstances, plaintiffs' failure to rescind the contract is fatal to their complaint for fraud. *Hall v. World Omni Leasing*, 209 Ga. App. 115, 118 (3) (433 SE2d 297) (1993).

Furthermore, the contract in this case contains a merger clause providing that the contract was the sole agreement between the parties. "In the absence of any evidence that [plaintiffs were] prevented from reading the contract, the presence of this clause defeats [plaintiffs'] claim of justifiable reliance on any representations by [defendants]. [Cit.]" *Garcia v. Charles Evans BMW*, 222 Ga. App. at 122.

Similarly, we reject plaintiffs' arguments regarding the statute of frauds, mistake and equity. See *Charles S. Martin Distrib. Co. v. Bernhardt Furniture Co.*, 213 Ga. App. 481 (1) (445 SE2d 297) (1994).

3. We also find the trial court correctly granted summary judgment on plaintiffs' conversion claim. " 'Conversion is the unauthorized assumption and exercise of the right of ownership over personal property belonging to another which is contrary to the owner's rights. (Cit.)' [Cit.]" *Rush v. Farmers &c. Bank*, 162 Ga. App. 65 (290 SE2d 164) (1982). Inasmuch as the cemetery's rules and regulations provided that "[i]f any monument, effigy or any structure whatever or any inscription be placed on or upon any lot which shall be determined by the management to be offensive or improper or injurious to the appearance of surrounding lots or grounds or not according to the Cemetery rules, they may enter upon such lot and remove the same," we find the cemetery was expressly authorized to remove and retain the marker until plaintiffs paid the installation fee in compliance with cemetery rules and regulations. Therefore, an essential element

of plaintiffs' conversion claim is missing. *King v. Crain-Daly Volkswagen*, 207 Ga. App. 583 (428 SE2d 586) (1993).

4. The trial court correctly granted summary judgment on plaintiffs' remaining claims against defendants for emotional distress under OCGA § 51-12-6 and punitive damages.

" 'OCGA § 51-12-6 'does not create a cause of action for injury to peace, feelings or happiness, but prescribes the measure of recovery where such a cause of action exists. (Cit.)' *Westview Cemetery v. Blanchard*, 234 Ga. 540, 544 (216 SE2d 776) (1975). Thus, unless [defendants] committed a tortious act, with the result that [plaintiffs] suffered emotional distress, there can be no recovery. That [plaintiffs] suffered emotional distress does not, without more, demonstrate that [defendants] committed a tort." *Sanders v. Brown*, 178 Ga. App. 447, 448 (1) (343 SE2d 722) (1986).

As discussed in Divisions 1, 2, and 3, plaintiffs have not established a viable tort claim against defendants. Accordingly, the trial court correctly granted summary judgment on plaintiffs' claim for emotional distress. *Jahannes v. Mitchell*, 220 Ga. App. 102 (4) (469 SE2d 255) (1996). See also *Families First v. Gooden*, 211 Ga. App. 272 (7) (439 SE2d 34) (1993) regarding the trial court's correct grant of summary judgment on plaintiffs' claim for punitive damages.

*Judgment affirmed. Andrews, C. J., and Smith, J., concur.*

DECIDED FEBRUARY 17, 1997 —
RECONSIDERATION DENIED MARCH 20, 1997 — 

*Thomas M. Strickland*, for appellants.
*Hatcher, Stubbs, Land, Hollis & Rothschild, Teri Y. Callahan*, for appellees.