A11A0114. MARTIN et al. v. CENTRE POINTE INVESTMENTS, INC.

(712 SE2d 638)

MILLER, Presiding Judge.

American Society of Real Estate Appraisers, Inc. ("American") and its president, Eric T. Martin ("Martin") (collectively, "Plain-

tiffs"), appeal the trial court's grant of a joint motion for summary judgment filed by Centre Pointe Investments, Inc. ("Centre Pointe"), its owner and president, Gary Korynoski ("Korynoski"), its property manager, Eric Harris ("Harris"), and its employee, Marcus Ivory ("Ivory") (collectively, "Defendants"). Plaintiffs argue that the trial court erred in finding that Plaintiffs could not recover on their fraud claim against Defendants, asserting that it was the province of the jury to determine whether Martin justifiably relied upon oral representations made by Harris. We disagree and affirm the trial court's grant of summary judgment.

"Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case." (Citations omitted.) *Rubin v. Cello Corp.*, 235 Ga. App. 250, 251 (510 SE2d 541) (1998). On appeal of a grant of summary judgment, we must review the evidence de novo to determine whether the trial court erred in concluding that no genuine issue of material facts remain and that the party was entitled to judgment as a matter of law. Id. at 250.

The record reflects that Centre Pointe leased office space to American, specifically office suites 100, 150, and 170. When American fell behind on its lease payments, Centre Pointe initiated a dispossessory action against American. On January 22, 2008, the magistrate court entered a consent order, providing for a writ of possession effective January 26, 2008, at 5:00 p.m. On the same day, Centre Pointe and American entered into a Settlement Agreement, with Korynoski signing on behalf of Centre Pointe and Martin on behalf of American. Pursuant to the Settlement Agreement, American was required to remove all personalty from the premises by January 26, 2008, at 5:00 p.m. — the effective time of the writ of possession. The Settlement Agreement provided that any personalty left in the premises after this removal date would be deemed abandoned by American, and that Centre Pointe would be free to dispose of any such abandoned personalty in its sole and absolute discretion. The Settlement Agreement also contained the following two provisions:

Section 6. *AMENDMENT*. This Agreement may not be amended or otherwise modified except by a writing signed by the Parties.

Section 7. *ENTIRE AGREEMENT*. This Agreement sets forth the entire agreement and understanding of the Parties, and all previous or contemporaneous discussions, understandings, representations, negotiations, or agree-

ments respecting the matters included in or relating to this Agreement are merged herein.

Martin testified that after entering into the Settlement Agreement on January 22, 2008, he began making plans to move his property out of the Centre Pointe office suites and into storage space. Shortly thereafter, Martin was approached by Robert T. Lewis a/k/a Skip Lewis ("Lewis"), who identified himself as a managing partner of Atlanta Travel and Training Center, LLC ("ATTC"). Lewis told Martin that ATTC had an agreement with Centre Pointe to lease office suite 100, and that ATTC had paid the first month's rent and security deposit. Lewis further claimed that ATTC had full rights to enter into a sublease agreement with Martin. Based on Lewis' representations, Martin and Lewis (who signed on behalf of ATTC) entered into a Sublease Agreement on January 24, 2008. The Sublease Agreement provided that Martin would sublease office suite 100 from ATTC, for a period beginning January 26, 2008, and ending on March 1, 2008.

Although Martin admits that neither Harris, Korynoski, Ivory, nor any other Centre Pointe employee ever signed a document approving the Sublease Agreement, there is conflicting testimony regarding Harris' approval of, as well as Centre Pointe's knowledge of, the Sublease Agreement. Per Martin's testimony, he checked with Harris immediately following the execution of the Sublease Agreement; Harris purportedly affirmed the existence of a lease agreement between Lewis and Centre Pointe and assured Martin that the Sublease Agreement would not be a problem. Martin claims that he also called Korynoski in an attempt to discuss the Sublease Agreement, but that he was not able to get in contact with Korynoski.

Harris, on the other hand, testified that the first time he saw or heard about the Sublease Agreement was when Martin showed it to him around 3:00 p.m. on January 26, 2008. Harris claims that as soon as Martin showed it to him, he told Martin that it would not be honored; Harris admitted that he never conferred with Korynoski about the Sublease Agreement, stating only that he knew that Centre Pointe would not approve it.

Contrary to the testimony of the other deponents, Lewis testified that following the execution of the Sublease Agreement, he showed it to Harris, Ivory, Korynoski and Korynoski's partner, all of whom told Lewis that Centre Pointe would not honor the Sublease Agreement.[1] Lewis claims he then relayed this message to Martin on January 25, 2008, but that Martin responded by stating that he

---

[1] Harris, however, testified that he never had any discussions with Lewis regarding the Sublease Agreement. Similarly, Korynoski testified that no one ever approached him about the

refused to vacate office suite 100.

On January 26, 2008, Martin began moving his property out from office suites 150 and 170 and into storage space; as contemplated by the Sublease Agreement, however, none of his property was removed from office suite 100. Martin testified that throughout the day on January 26, 2008, Harris continued to tell Martin that it was not a problem for Martin to keep his property in office suite 100, and that Martin would be permitted to reenter the suite and collect his property later. Martin stated that it was not until 3:00 p.m. on January 26, 2008, when he learned that Centre Pointe was not going to honor the Sublease Agreement. Martin testified that one of his associates had overheard Korynoski, Harris, Ivory, and Lewis (all of whom were allegedly on the premises on January 26, 2008) saying that they were going to lock the doors to all of the office suites, including suite 100, at 5:00 p.m. per the Settlement Agreement. Martin claims that he then proceeded to raise the issue with Harris, and that Harris again made oral assurances that there was no problem with Martin leaving his property in office suite 100. Despite Harris' purported assurances, Martin testified that he nevertheless decided to move his property out of office suite 100. However, Martin was unable to move all of his property out of the suite by 5:00 p.m., at which time Centre Pointe told Martin to vacate the premises and locked the doors to all of American's office suites. Martin was not able to reclaim any of the property that still remained in office suite 100, and Centre Pointe subsequently negotiated with Lewis for a sale of the remaining property.

The underlying lawsuit followed, wherein Martin and American sued Centre Pointe, Korynoski, Ivory, and Harris, as well as Lewis d/b/a ATTC, raising allegations of conversion, fraud, and breach of agreement to pay Martin a real estate brokerage commission. Defendants[2] moved for summary judgment. The trial court granted Defendant's motion for summary judgment, finding that Plaintiffs could not recover on their fraud claims because Martin's reliance was not reasonable as a matter of law.

The elements essential to an action in tort for fraud are: (1) false representation by a defendant, (2) scienter, (3) intent to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by the

---

Sublease Agreement, and that he saw the Sublease Agreement for the first time after January 26, 2008, when he was helping to clear out Martin's property still remaining in office suite 100. Likewise, Ivory testified that he never saw nor heard of the Sublease Agreement.

[2] Although Plaintiffs originally named Lewis d/b/a ATTC as a defendant in this case, it appears Lewis filed for and received a discharge in bankruptcy in 2009. Lewis d/b/a ATTC was not a party to the underlying summary judgment proceedings, and Plaintiffs' fraud claims against Lewis d/b/a ATTC are not at issue on appeal.

plaintiff, and (5) resulting damage to the plaintiff. *Potts v. UAP-GA AG CHEM, Inc.*, 256 Ga. App. 153, 155 (1) (567 SE2d 316) (2002). In order to prove the fourth element of justifiable reliance, a party must show that he exercised his duty of due diligence. *Reeves v. Edge*, 225 Ga. App. 615, 618 (2) (484 SE2d 498) (1997). "Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence." Id. (Citations and punctuation omitted.) While "[j]ustifiable reliance, more often than not, is a jury issue," summary judgment may be appropriate if "the means of ascertaining the relevant facts are equally available to all parties." *Ades v. Werther*, 256 Ga. App. 8, 11-12 (2) (a) (567 SE2d 340) (2002).

The trial court cites several grounds supporting its conclusion that Martin's reliance was not reasonable as a matter of law. The trial court first noted that only two days prior to entering into the Sublease Agreement, Martin, who was an experienced real estate agent, had signed a Settlement Agreement in which he agreed to remove his property by 5:00 p.m. on January 26, 2008. The trial court further referenced the terms of the Settlement Agreement reciting that it was the sole embodiment of all agreements and understandings between and among the parties with regard to the lease and premises and requiring all modifications and amendments to be in writing and signed by the parties. The trial court thus concluded that Martin's reliance on Harris' oral representations were unreasonable given the clear terms of the Settlement Agreement.[3]

While we agree with the trial court's conclusions, we believe that the trial court's order neglected a necessary layer of analysis. Specifically, we do not believe that the terms of the Settlement Agreement alone necessarily foreclose a finding of justifiable reliance on the part of Martin. Regardless of how clear or unambiguous these terms may have been, Harris' purported oral modification of the Settlement Agreement raises questions of contract principles that we find necessary to address at the outset, and prior to making any

---

[3] While the trial court also supported its conclusion with the fact that either Korynoski or Rodney Scoggins (who is purportedly a co-owner of Centre Pointe) had signed all previous agreements between American and Centre Pointe, we do not believe this fact precludes a finding of justifiable reliance as a matter of law. Notably, the record contains conflicting testimony that raises genuine issues of material fact as to whether Martin was justified in believing that Harris, as the property manager for Centre Pointe and the individual with whom Korynoski told Martin to deal exclusively, had authority to enter into agreements or modifications thereto on Centre Pointe's behalf. Nevertheless, because we find that Martin's reliance was not justified as a matter of law on other grounds, discussed infra, summary judgment was proper.

determination about whether the trial court was correct in finding Martin's reliance to be unjustified as a matter of law.

Applying such contract principles to this case, we find that Harris orally assured Martin that he could keep his property in office suite 100 beyond January 26, 2008 — oral assurances which effectively modified the provision in the prior written Settlement Agreement requiring Martin to remove all of his property from the premises by 5:00 p.m. on January 26, 2008. While Georgia law generally recognizes the validity of subsequent oral modifications to a written agreement when they are accompanied by additional consideration, see *Vasche v. Habersham Marina*, 209 Ga. App. 263, 265 (2) (433 SE2d 671) (1993), the Settlement Agreement in this case contained a clause obviously intended to prohibit such subsequent oral modifications by expressly requiring all modifications and amendments to be in writing and signed by the parties. Nevertheless, we do not think such a requirement necessarily forecloses a finding of justifiable reliance. Instead, it requires us to address the other contract principle pertinent to this analysis — that a waiver of an agreement's written modification requirement may be established through the course of conduct and regular business practices between the parties. See, e.g., *American Car Rentals v. Walden Leasing*, 220 Ga. App. 314, 316 (1) (a) (469 SE2d 431) (1996).

Here, however, we find that Martin proffers facts that not only fail to demonstrate any waiver of the written modification requirement, but that also undermine the existence of any such waiver. Notably, Martin contends that the following facts constituted a "writing" that *satisfied the written modification requirement* of the Settlement Agreement: the Sublease Agreement was a written document; Lewis purportedly showed this document to Harris or Korynoski; and Harris orally represented to Martin that Lewis had a lease with Centre Pointe and that the Sublease Agreement would be honored. Moreover, the course of conduct between the parties with respect to the Settlement Agreement reflects only that they did in fact proceed according to its written modification requirement. Specifically, the record contains the parties' executed addendum to the Settlement Agreement — an amendment that was not only in writing, but also signed by both Martin (on behalf of American) and Korynoski (on behalf of Centre Pointe).

In sum, Martin alleges no facts, nor do we see any evidence on the record, demonstrating a possible waiver of the express term of the Settlement Agreement requiring all modifications to be in writing and signed by the parties. As such, we find Martin could not justifiably rely on Harris' subsequent oral representations that purported to modify the Settlement Agreement. Absent justifiable reliance, Plaintiffs are unable to establish a prima facie case of fraud,

and Defendants were therefore entitled to judgment as a matter of law.

*Judgment affirmed. Doyle, J., concurs. Ellington, C. J., concurs in judgment only.*

DECIDED JUNE 23, 2011.

**Maurice J. Bernard III**, for appellants.

*Gray, Rust, St. Amand, Moffett & Brieske, Michael J. Rust, Samuel I. Moss, Duane Morris, William D. Barwick*, for appellee.