A02A1949. SMILEY et al. v. S & J INVESTMENTS, INC. et al.

(580 SE2d 283)

ELDRIDGE, Judge.

Ronald C. Smiley and Terri H. Smiley appeal from the grant of summary judgment in their suit for fraud, breach of contract, professional negligence, and negligent misrepresentation against S & J Investments, Inc., Jack E. Hall, Jr., and Hussey, Gay, Bell & DeYoung, Inc., Consulting Engineers ("HGB&D") in the purchase of their home.

On July 27, 1998, the plaintiffs entered into a real estate purchase and sales contract with S & J, and the next day Hall, as the principal agent, delivered to them a Seller's Property Disclosure Statement for 13 Wylly Island, which the plaintiffs contend was fraudulent. Plaintiffs contend that the statement contained in standard form the following questions and responses which were intentionally false: "Are you aware of any past or present sliding, settling, earth movement, upheaval, or earth stability/expansive soil problems? No"; "Are you aware of any past or present drainage or flooding problems? No"; "Structural items. Are you aware of any past or present movement, shifting, cracking, deterioration, or other structural problems with floors, walls, or foundation? No"; "Are you aware of any past or present problems with driveways, walkways, patios, or retaining walls on the property? No"; "Water leakage or drainage? No."

Prior to the purchase contract being executed, the plaintiffs, in the exercise of reasonable diligence, had Mark Shaw, a former building contractor, inspect the premises; Shaw expressed concern over the condition of the house.[1] Because of plaintiffs' concern over Shaw's findings and to induce the sale, S & J had HGB&D make an engineering inspection and prepare a report to give to the plaintiffs and to allay the plaintiffs' concern prior to closing. Plaintiffs relied on the professional reputation of HGB&D and on the fact that HGB&D had

---

[1] Shaw reported that the garage door header was moving and causing the stucco to crack; that rafters over the front porch were unsupported; that the great room ceiling/floor joist beams indicated signs of settling; that anchor bolts connecting the pool to the deck were rusty, needing replacement; and that the gazebo on the pool deck was unstable.

made a visual inspection and had "found no signs of structural failures." Initially, the plaintiffs offered $600,000 for the house because they were concerned that it had structural defects, requiring repair; however, the plaintiffs, in reliance upon the representations of Hall and S & J and the inspection by HGB&D purchased the house for $670,000, and later found that the house had numerous defects of which they had been unaware at closing.

Plaintiffs attached to an amended complaint the affidavit of their expert witness, David C. Sladek, P.E., who on inspection of the house after sale found a number of structural failures that in the exercise of reasonable engineering care should have been found on a visual inspection by HGB&D, i.e., piers were not aligned and were twisted with the bearing beams; some beams were inadequate for loading; the garage header was deflecting; hurricane clips were absent from the rafters; some rafters lacked support; and the gazebo was not properly braced, supported, and tied down. The special damages were required repairs: restucco entire house; addition of several foundation piers; remove and replace ceiling beams, resheetrock, and repaint the great room; replace crown molding in great room with larger molding; replace crown molding in other areas of the house with larger molding; retile the foyer; strip and refinish all hardwood floors; tile laundry room floor; add back splash in kitchen; add steps on pool deck to dock; fix the gazebo; and landscape.

After acquiring the property in 1996, Hall had the floors redone as wood floors throughout the living area by removing the ceramic tile and by replacing the subflooring; because of irregularities shown to him by the flooring people, Hall had sleepers added to floor joists to level the kitchen floor. In the kitchen, the floors were not level, and there existed unevenness around the refrigerator; the flooring contractor, with Hall's knowledge, added sleepers to the existing floor joists to strengthen the joists to level the floor. Despite the reworking and strengthening of the kitchen floor joists, the kitchen floor developed a further depression in front of the refrigerator. Such condition can be reasonably inferred to indicate an abnormal sinking or settling of the house. Hall did not disclose to Smiley that the repair work had been performed by adding sleepers to the floor joists and that the depression occurred after the floors had been leveled.

When Smiley asked about the sag in the kitchen floors, Hall's statements regarding the kitchen depression minimized the condition and did not reveal the failed attempt to repair and level the floors and the failure of such repairs to keep the kitchen floor level. Thus, the attempted repairs to level the floors failed and the sagging recurred. Since Hall misrepresented the cost of the expert inspection that he had commissioned and failed to reveal the failed repair attempt, when considered with his training and experience as a

licensed real estate agent, developer, and general contractor, a factual issue of scienter for jury determination arises.

1. The plaintiffs contend that the trial court erred in granting HGB&D's motion for summary judgment on the claim of professional negligence. We do not agree.

While the Sladek affidavit satisfied the OCGA § 9-11-9.1 requirements to bring an action for professional negligence, the plaintiffs had no professional relationship with HGB&D, giving rise to the duty to exercise that degree of reasonable care and caution exercised by engineers under the same or similar circumstances. The plaintiffs lacked privity with HGB&D. Absent privity between the plaintiff and the professional, generally, the professional cannot be sued for professional negligence by a third party. *Howard v. Dun & Bradstreet, Inc.*, 136 Ga. App. 221, 223 (220 SE2d 702) (1975); see *Anderson v. Houser*, 240 Ga. App. 613, 618-619 (1) (523 SE2d 342) (1999) (on-call physician who did not treat the plaintiff); *Schrader v. Kohout*, 239 Ga. App. 134, 136-138 (522 SE2d 19) (1999) (psychologist who never treated patient); *Williams v. Fortson, Bentley & Griffin*, 212 Ga. App. 222, 223-224 (1) (441 SE2d 686) (1994) (lawyer handling closing for lender and not the purchaser).

> [T]he trend in Georgia[, however,] has been to relax the rule of strict contractual privity in malpractice actions, recognizing that under certain circumstances, professionals owe a duty of reasonable care to parties who are not their clients. *Driebe v. Cox*, 203 Ga. App. 8, 9 (1) (416 SE2d 314) (1992). Exceptions to the privity rule have been carved out where injury to third parties is foreseeable. For example, in cases involving negligent misrepresentation of facts, liability extends to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly. . . . [Otherwise] there will be no liability in the absence of privity, wilfulness or physical harm or property damage. *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 682 (300 SE2d 503) (1983).

(Punctuation omitted.) *Samuelson v. Lord, Aeck & Sergeant*, 205 Ga. App. 568, 570-571 (2) (423 SE2d 268) (1992) (architect for inherently dangerous design causing personal injury). However, none of the exceptions to privity here apply with the exception of negligent misrepresentation, which will be addressed in Division 2.

Plaintiffs contend that the negligent termite inspection cases show that privity is not required in this case. Termite inspection and treatment are regulated by statute and rules of the Agriculture Department. See OCGA §§ 43-45-1; 43-45-16 et seq. However, to

avoid the privity requirement for a tort action by a third party, the termite inspection cases are based upon contracts for inspection and treatment that specifically provide for third-party beneficiaries to the contract or for assignment of the contract to third parties, which is not present in this case. *Buchanan v. Ga. Boy Pest Control Co.*, 161 Ga. App. 301 (287 SE2d 752) (1982); see also *Perloe v. Getz Exterminators*, 163 Ga. App. 397, 398 (294 SE2d 640) (1982); *Allred v. Dobbs*, 137 Ga. App. 227, 228 (2) (223 SE2d 265) (1976). Here, the inspection report was not a contract nor did it provide for assignment, and it did not create a third-party beneficiary status for the plaintiffs, although the defendants expected the report to be relied upon by the plaintiffs as third parties.

Under the facts of this case, the negligence, if any, of the engineering firm neither was inherently dangerous, caused personal injury, nor caused property damage to occur from its negligence; any cause of action that exists against HGB&D under the facts and circumstances of this case arises under an action for negligent misrepresentation by a professional reasonably relied upon to the detriment of a third party whose reliance was foreseeable. *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, supra at 682. Thus, the trial court properly granted summary judgment on the theory of professional negligence.

2. The plaintiffs contend that the trial court erred in granting summary judgment to the defendants on the claim for negligent misrepresentation. We agree as to HGB&D but disagree as to Hall and S & J.

The theory of liability for negligent misrepresentation generally applies to the professional defendants only, who provide information that is false through failure to exercise reasonable care or competence in obtaining information that is relied upon by a third party and such reliance is foreseeable. *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, supra at 681. Thus, HGB&D came within the theory of liability under the facts and circumstances of this case. Further, clearly, the plaintiffs fall within the class of third parties expected and intended to rely upon the report. *Badische Corp. v. Caylor*, 257 Ga. 131, 133 (356 SE2d 198) (1987).

Under some circumstances, not present in this case, there could be liability of Hall and S & J for negligent misrepresentation where one who

in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the

information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, supra at 681, n. 1, citing Restatement (Second) of Torts, § 552 (1977); see also *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1) (479 SE2d 727) (1997). However, the evidence shows that Hall and S & J did, in fact, exercise reasonable care and competence in obtaining the report and did accurately communicate the report of the investigation's findings, because they exercised reasonable care in retaining HGB&D, reputable professional engineers, and in communicating exactly what HGB&D reported to them in turn to the plaintiffs without any additions, deletions, or opinions of their own. If the sellers negligently furnished false information to the inspector to use in making his inspection, if the sellers failed to exercise ordinary care, preventing the inspector from access to all or part of the premises, or if they negligently added to, deleted from, or gave their opinion based upon the false report without conducting an independent investigation of their own, then there would be an issue of material fact as to their negligent misrepresentation under the Restatement (Second) of Torts, § 552 (1977), for the sellers' acts or omissions. The sellers, because of a pecuniary interest, i.e., desire to induce the sale of the premises, procured the report that the buyer was to rely upon; however in this case, the sellers did not fail to exercise ordinary care either in "obtaining" or "communicating" the report. Id. Absent some evidence that the sellers knew or reasonably should have known that the report was false or contained false material facts that they then negligently communicated the report to the buyer, the buyer did not have a cause of action for negligent misrepresentation under Restatement (Second) of Torts, § 552 (1977), against the sellers. See in general *Roberts & Co. Assoc. v. Rhodes-Haverty Partnership*, supra at 681; *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 145 (2) (524 SE2d 790) (1999). Where the sellers have not been negligent in making the representation themselves or induced another to do so, the inspector's professional negligence cannot be imputed to them, because the engineers were independent contractors. See OCGA § 51-2-4; *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 92 (1) (327 SE2d 188) (1985); *Robbins Home Improvement Co. v. Guthrie*, 213 Ga. 138, 139-140 (97 SE2d 153) (1957). Even if Hall requested or even urged HGB&D to perform only a cursory inspection of the house without performing a proper inspection under professional standards of care, HGB&D's professional duties and responsibilities required that such entreaties by Hall be ignored, because the professional standard of care and not the client's desires governs the standards of any inspec-

tion or investigation; therefore, negligent misrepresentation would not be applicable to Hall and S & J. See *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, supra at 681. Thus, Hall's conduct under these facts and circumstances in a negligent misrepresentation case cannot be the proximate cause or even a concurrent proximate cause of any negligence by HGB&D, absent acts by Hall that prevented an inspection or a complete inspection or actively interfered with the conduct of the inspection so that it was incomplete. Id. There is no evidence that Hall either prevented the inspection or took steps that interfered with the inspection.

The essential elements of negligent misrepresentation are: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, supra at 426 (1).

> The tortfeasors negligently gave such [report] to another with the full expectation that such [report], unchanged, would be given to and relied upon by the plaintiffs. Liability was premised, not on scienter, but upon negligence in making the representations relied upon as experts upon whom it is reasonably expected that others will rely. . . . The foregoing cases are a hybrid "fraud" action, based upon professional negligence, not scienter.

*Simpson Consulting v. Barclays Bank*, 227 Ga. App. 648, 651-652 (1) (490 SE2d 184) (1997) (physical precedent only).

Sladek testified both as to the existence of false information by HGB&D regarding the absence of structural defects as well as to the cost to repair such defects that a lay person would not discover. Thus, evidence was introduced as to two of the elements creating a jury issue as to such issues. *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, supra at 426.

As to the issue of reliance, Mr. Ming Hsu, HGB&D's inspecting engineer, had been informed by Hall that the inspection was to induce the purchase of the house by the plaintiffs and to allay the potential purchasers' fears over the Shaw inspection, calling for an engineering inspection. Notwithstanding this, Hsu testified that he did not enter the house or inspect the great room, basement, and attic and that he spent less than one hour in inspecting the gazebo, pool, dock, and house on the premises.

> In making a determination of whether the reliance by the third party is justifiable, we will look to the purpose for

which the report or representation was made. If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach. If such cannot be shown there will be no liability in the absence of privity, wilfulness or physical harm or property damage.

(Punctuation omitted.) *Badische Corp. v. Caylor*, supra at 133.

The plaintiffs have testified that the HGB&D report induced them to sign the contract even though they had made an earlier offer of $100,000 less than the asking price to reflect possible structural defects. The report was prepared by HGB&D and given to them by Hall to negate the Shaw report, which it did. Thus, evidence has been introduced of reliance, leaving the issue of whether such reliance was justified for jury determination.

Whether or not the plaintiffs acted with justifiable reliance or should have had their own engineering study done is a jury question under the facts and circumstances of this case. *Wiederhold v. Smith*, 203 Ga. App. 877, 878 (1) (418 SE2d 141) (1992). The issue of whether a purchaser has acted with the requisite due diligence is generally for the jury. *Akins v. Couch*, 271 Ga. 276, 278 (2) (518 SE2d 674) (1999); accord *Conway v. Romarion*, 252 Ga. App. 528, 533 (3) (557 SE2d 54) (2001). The plaintiffs had Shaw, a former builder, inspect, and the HGB&D engineering report stated structural fears were groundless. Thus, this jury issue requires that the grant of summary judgment as to HGB&D be reversed and as to Hall and S & J be affirmed.

3. The plaintiffs contend that the trial court erred in granting summary judgment to Hall, S & J, and HGB&D on the claim of fraud. We agree as to Hall and S & J, but disagree as to HGB&D.

The elements of fraud are: (1) false representations; (2) made with knowledge of the falsity of the representation; (3) made with the intent to induce the plaintiff to act or to refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages proximately caused by such reliance in the representation. See *Simpson Consulting v. Barclays Bank*, supra at 650.

(F)raud in the sale of real estate may be predicated upon a wilful misrepresentation, i.e., the seller tells a lie; upon active concealment where the seller does not discuss the defect but takes steps to prevent its discovery by the purchaser; and thirdly a passive concealment where the seller does nothing to prevent the discovery but simply keeps quiet

about a defect which though not readily discernible, is known to the seller.

*Holloman v. D. R. Horton, Inc.*, supra at 143 (2). Here, only the first type of active fraud is charged, i.e., that Hall lied on behalf of S & J.[2]

The plaintiffs have shown that Hall misrepresented what Hsu did, what HGB&D was paid for the report, that Hall represented that there were no other structural defects other than what he showed the plaintiff, that Hall failed to reveal material facts that the repairs to level the kitchen floor had been made and that the kitchen floor after the repairs again sagged, plaintiffs have produced evidence that Hall knew of the kitchen repair failure, and it could be inferred that he knew of the other structural defects found later by plaintiffs' expert. Further, there was no evidence that HGB&D ever discovered any structural defects in its allegedly negligent inspection. A reckless representation not known to be true can constitute fraud the same as if known to be false and made to deceive; to recklessly represent facts as true to deceive, when it is not known whether or not such facts are true, is fraud as a matter of law, while a knowingly false representation is fraud in fact. *Boroughs v. Belcher*, 211 Ga. 273 (1) (85 SE2d 422) (1955); *McDonald v. Mullins*, 197 Ga. 511 (1) (29 SE2d 507) (1944). Thus, HGB&D has not been shown to have committed actual fraud, although Hall and S & J may have committed fraud.

In this case, Hall and S & J were charged with the intent to defraud, which involves actual moral guilt, scienter, and which requires proof of the knowledge of the falsity of the representation and the intent to deceive. *Scarbrough v. Hallam*, 240 Ga. App. 829, 832 (3) (525 SE2d 377) (1999). For purposes of summary judgment, scienter and intent to deceive are determined on the basis of the seller's knowledge of the falsity of his representations at the time made to the prospective purchaser and not upon later acquired knowledge. *Reilly v. Mosley*, 165 Ga. App. 479, 480 (1) (301 SE2d 649) (1983). Here Hall's experience as a realtor, developer, and general contractor and knowledge of the failed repairs, when coupled with the failure to reveal these material facts, constitute more than a scintilla of evidence to raise an inference that Hall was aware of one or

---

[2] "Georgia law [places] a special duty of disclosure on the builder-seller that markets its new homes to consumers." *Holloman v. D. R. Horton, Inc.*, supra at 143-144 (2). Here, neither Hall nor S & J was the builder of the house as a new home for sale. Where the seller or other third party knows of the defect but does not reveal it, this is passive fraud. "[T]he misrepresentation exception to the economic loss rule, as set forth in the Restatement [(Second)] of Torts, [§ 552 (1977),] 'is no more than an affirmation of the principles of passive concealment or plain fraud, constructive or actual.' (Citation and punctuation omitted.) [*Swiedler v. Ferguson*, 195 Ga. App. 364, 366 (393 SE2d 456) (1990).]" Id. at 148 (4).

more of the structural defects later discovered and create an issue of material fact. Thus, the plaintiffs have produced some evidence of scienter sufficient to create an issue of fact on this essential element of fraud. Thus, plaintiffs must prove actual fraud from actual knowledge and not passive fraud based upon constructive knowledge; they have established a jury issue as to actual fraud. *Forsyth v. Jim Walter Homes*, 177 Ga. App. 353, 354 (1) (339 SE2d 350) (1985); *Butler v. Terminix Intl.*, 175 Ga. App. 816, 818 (2) (334 SE2d 865) (1985). Where a later inspection reveals a condition, an earlier inspection by the defendant does not prove discovery and knowledge at the time of the alleged misrepresentation made prior to the discovery in the later inspection. *Vester v. Mug A Bug Pest Control*, 231 Ga. App. 644, 645-646 (1) (500 SE2d 406) (1998), rev'd on other grounds, *Mug A Bug Pest Control v. Vester*, 270 Ga. 407 (509 SE2d 925) (1999). Hall and S & J had to know that the representations were false when made or that the representation was recklessly made with the intent to deceive for liability in fraud to attach. *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 596 (10) (533 SE2d 136) (2000); *Hall v. Richardson Homes*, 168 Ga. App. 593, 595-596 (2) (309 SE2d 825) (1983); *Oklejas v. Williams*, 165 Ga. App. 585, 586-587 (2) (302 SE2d 110) (1983). A statement as to the nonexistence of other structural defects when made by Hall may be found by a jury to be a mere statement of opinion; however, there was evidence of actual knowledge of the structural defect, undisclosed, in the foundation from the failed repairs in the kitchen floor. *Morris v. Budd*, 226 Ga. App. 455, 456-457 (1) (486 SE2d 682) (1997) (opinion that there was no asbestos in the building). Knowledge of the falsity of the representation is an essential element of fraud. *Brookshire v. Digby*, 224 Ga. App. 512, 515 (481 SE2d 250) (1997); *DCA Architects v. American Bldg. Consultants*, 203 Ga. App. 598, 601 (3) (417 SE2d 386) (1992). A jury could find that Hall had knowledge of defects in the foundation from the sinking kitchen floor as well as other structural defects. Thus, summary judgment was improper as to Hall and to S & J on the fraud claim but not as to HGB&D.

4. The plaintiffs contend that the trial court erred in granting summary judgment to S & J on the claim for breach of contract. We agree.

Hall recklessly made representations as to the structural integrity of the house and property in the Seller's Disclosure Statement, and this statement became incorporated into the contract by reference. Thus, there were damages, because the house was not in the condition represented in the contract, including the Seller's Disclosure Statement; the cost to repair was over $100,000 to remedy.

Thus, when negligent misrepresentations are made by a third party, i.e., HGB&D, that induced the plaintiffs to purchase, the pur-

chasers can sue the seller, i.e., S & J, for the resulting damages under the contract where such misrepresentations become part of the contract and are relied upon by the purchasers. See generally *Conway v. Romarion*, supra at 530 (1); *Keller v. Henderson*, 248 Ga. App. 526, 528 (2) (545 SE2d 705) (2001). A jury issue arises where there is evidence that the contract incorporated the disclosure statement containing false statements as to the condition of the property sold and gives rise to contract remedies either for breach or rescission. *Holloman v. D. R. Horton, Inc.*, supra at 142-143 (1); see also *Conway v. Romarion*, supra at 530-532 (1). Since the representations were made within the four corners of the contract, then the merger clause does not prevent the plaintiffs from claiming reliance to their detriment. *Conway v. Romarion*, supra at 532 (2); *Fann v. Mills*, 248 Ga. App. 460, 464 (2) (546 SE2d 853) (2001).

While the plaintiffs could not sue S & J for negligent misrepresentation, because S & J did not make a negligent investigation or negligently report the findings and because HGB&D's negligent misrepresentations cannot be imputed to it, the plaintiffs can sue S & J for breach of contract arising from the incorporation of such false terms into the contract, i.e., the house contained structural defects although the contract stated that it did not. Thus, knowledge or lack of knowledge of such structural defects under the contract by S & J does not constitute a contract defense, because the absence of structural defects in the house was a term of the contract.

Therefore, the trial court erred in granting summary judgment on the breach of contract action against S & J.

*Judgment affirmed in part and reversed in part. Smith, C. J., concurs. Ellington, J., concurs in judgment only.*

DECIDED MARCH 21, 2003 —

*Thomas A. Nash, Jr.*, for appellants.

*Inglesby, Falligant, Horne, Courington & Chisholm, Sam P. Inglesby, Jr., Glen M. Darbyshire, Ellis, Painter, Ratterree & Bart, R. Clay Ratterree, Maury B. Rothschild*, for appellees.