308 Ga. 842
FINAL COPY

S19G1000. GLOBAL PAYMENTS, INC. v. INCOMM FINANCIAL
SERVICES, INC.

ELLINGTON, Justice.

In *InComm Financial Svcs. v. Global Payments,* 349 Ga. App. 363, 365 (1) (825 SE2d 839) (2019), the Court of Appeals reversed the trial court's order dismissing InComm's negligent misrepresentation claim against Global based on Global's having transmitted to InComm allegedly false information generated by a third party. We granted Global's petition for a writ of certiorari to consider that holding. Because the allegations of the complaint show that Global merely transmitted data concerning debit and credit card transactions without representing that the transactions were legitimate, the Court of Appeals erred, and we reverse.

We begin with the well-settled standard that

[a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief

under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citations omitted.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997). "On appeal, a trial court's ruling on a motion to dismiss for failure to state a claim for which relief may be granted is reviewed de novo." *Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012). So viewed, InComm's complaint shows the following.

InComm issues pre-paid debit and credit cards under the "Vanilla VISA" brand to cardholders who use the cards to buy goods and services. Global is a financial data payment processor. Global provides its clients, primarily merchants, with payment technology hardware and software that allows them to accept card payments and to communicate electronically with card networks and card

issuers. For example, when a Vanilla VISA cardholder makes a purchase from a merchant who is a client of Global, Global transmits the payment data it receives from the merchant to the VISA network, and the VISA network relays the data to the card issuer, InComm. In this case, thieves purchased Vanilla VISA pre-paid debit and credit cards and used them to buy goods and services. Then, using certain merchants that were not the merchants who originally sold the goods and services, the thieves initiated counterfeit electronic "reversal transactions" — basically requests for refunds on behalf of the cardholders. Upon receiving the reversal transaction data from the merchants, Global relayed the data to the VISA network. The VISA network then submitted the reversal transaction data to InComm. InComm received the data, posted the reversal transactions to the cardholder accounts, and then issued credits to the merchants who, in turn, passed the credits on to the thieves holding the Vanilla VISA cards. The thieves then converted those credits (in excess of $1.5 million made over 3,600 transactions) to their use.

InComm does not allege that Global participated in creating the counterfeit reversal transactions. InComm alleged in its complaint that thieves used merchants to create the counterfeit reversal transactions at issue. Specifically, InComm alleged that "all of the Reversal Transactions were initiated through the accounts of the Reversal Merchants and electronically transmitted to [Global]." Although Global had no role in creating the counterfeit transactions, InComm nevertheless asserted that Global is liable for the losses InComm suffered as a consequence of those transactions because Global negligently supplied to the VISA network the data created by the reversal merchants. In support of its claim, InComm asserted that Global, as a payment processor, "had a duty to exercise reasonable care in supplying the VISA Network and its participants with the transactions initiated by the Reversal Merchants." InComm alleged that Global

> knew or should have known that the Reversal Transactions were invalid because: (a) the Originating Merchants (who debited the Vanilla VISA cards) were different from the Reversal Merchants; (b) the preauthorization keys transmitted by the Reversal

Merchants in the Reversal Transactions did not match any prior preauthorization key sent by the same Reversal Merchant; and (c) the preauthorization keys of the Reversal Transactions did not match any preauthorization keys in any Originating Transaction processed by [Global].

Citing this Court's decision in *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983), InComm alleged that Global owes it a common-law duty of ordinary care and is liable to it under a negligent misrepresentation tort theory of liability for supplying it with "bogus data." InComm has not alleged, however, that Global transmitted data that had been altered intentionally or negligently by Global or that otherwise failed to accurately reflect the counterfeit transactions.

"In [*Robert*,] this Court first recognized a claim for negligent misrepresentation and adopted the liability standard set forth in section 552 of the Restatement (Second) of Torts." *BDO Seidman, LLP v. Mindis Acquisition Corp.*, 276 Ga. 311, 311 (1) (578 SE2d 400) (2003).[1] Under the standard adopted in *Robert*,

---

[1] Although this Court has looked to § 552 of the Restatement (Second) of

one who supplied information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

(Citation, punctuation and emphasis omitted.) *Badische Corp. v. Caylor*, 257 Ga. 131, 132-133 (356 SE2d 198) (1987). Liability for a negligent representation attaches when a defendant makes a false representation upon which the plaintiff relies. See, e.g., *Robert*, 250 Ga. at 681-682 ("If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party [for negligent misrepresentation] can attach."); *Ali v. Fleet Finance*, 232 Ga. App. 13, 14 (500 SE2d 914) (1998) ("[B]ecause [the defendant] did not

Torts for guidance in defining the tort of negligent misrepresentation under Georgia law, § 552 is not a statute or other authority binding on Georgia's courts, and the Restatement should be considered as a whole for what it is — a learned treatise. InComm's efforts to have us parse § 552 and, in particular, to read it in isolation from the comments and illustrations that accompany it, are misplaced.

make any representations, [the plaintiffs] cannot set forth the requisite elements of [a claim for] negligent misrepresentation."). See also *Financial Security Assurance v. Stephens, Inc.*, 500 F.3d 1276, 1289 (III) (C) (11th Cir. 2007) (Under Georgia law, in advancing either a claim for fraud or negligent misrepresentation, "a plaintiff must establish that the defendant made false representations on which the plaintiff justifiably relied.").

Thus, under a negligent misrepresentation theory of liability, one who did not create the false information may nevertheless be liable for supplying it *if* the supplier represented that the false information was legitimate, accurate, or trustworthy. See *Robert*, 250 Ga. at 681-682; *Smiley v. S & J Investments*, 260 Ga. App. 493, 497 (2) (580 SE2d 283) (2003) (physical precedent only) (The Court of Appeals concluded that sellers of real property were not liable for making a negligent misrepresentation because they had simply transmitted an engineering report to the buyers without making any representations as to its accuracy. The sellers "communicat[ed] exactly what [the engineering company] reported to them in turn to

the plaintiffs without any additions, deletions, or opinions of their own.").

In this case, the Court of Appeals failed to consider the most fundamental aspect of InComm's negligent misrepresentation claim against Global, that is, whether the reversal transaction data that Global transmitted constituted false representations. InComm's own complaint reveals that the data Global transmitted from the reversal merchants to the VISA network was accurate and unaltered and that the transactions could be determined to be "bogus" only by comparing the merchants and authorization keys of each refund request with the same for the corresponding original purchase and by comparing the preauthorization key for a reversal transaction with others from the same merchant. InComm has not alleged that Global had any duty, whether common-law, statutory, or contractual, to make such comparisons. Further, InComm did not allege that, in relaying the refund transaction data, Global represented that the underlying transactions were legitimate. See *Robert*, 250 Ga. at 681-682; *Smiley*, 260 Ga. App. at 497 (2).

Given that InComm's complaint does not allege that Global made false representations to InComm and fails to allege that Global owed it a duty to detect and flag discrepancies between original purchase data and refund transaction data, InComm has failed to state a claim for negligent misrepresentation. See *Robert*, 250 Ga. at 681-682; *Ali*, 232 Ga. App. at 13-14 (Where the defendant did not make any representations about a building it sold to another "as is," the Court of Appeals concluded that a subsequent purchaser failed to set forth the requisite elements of a claim for negligent misrepresentation. (punctuation omitted)); cf. *Levine v. SunTrust Robinson Humphrey*, 321 Ga. App. 268, 280 (6) (b) (740 SE2d 672) (2013) (In affirming the denial of summary judgment to the defendant on the plaintiff's negligent misrepresentation claim, the Court of Appeals concluded that a question of fact remained concerning whether the defendant was negligent in representing that data obtained from others and incorporated into a valuation report provided to the plaintiff was true or whether the defendant knew or should have known that the data was inaccurate.). For

these reasons, the Court of Appeals erred in reversing the trial court's order dismissing InComm's negligent misrepresentation claim against Global.

*Judgment reversed. All the Justices concur, except Peterson and McMillian, JJ., disqualified.*

DECIDED JUNE 1, 2020.

Certiorari to the Court of Appeals of Georgia — 349 Ga. App. 363.

*Bondurant, Mixson & Elmore, Steven J. Rosenwasser, Benjamin W. Thorpe, Patrick C. Fagan, Frank M. Lowrey IV*, for appellant.

*The Finley Firm, Andrew M. Gibson, Daniel P. Hendrix*, for appellee.

*Gilbert Harrell Sumerford & Martin, Judson H. Turner, Mark D. Johnson*, amici curiae.