**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 2, 2025

# In the Court of Appeals of Georgia

A25A0028. TOLL BROTHERS, INC. v. THE LARKABIT PARTNERSHIP, L. P. et al.

A25A0029. THE LARKABIT PARTNERSHIP, L. P. et al. v. TOLL BROTHERS, INC.

RICKMAN, Presiding Judge.

This case involves a dispute over property owned by The Larkabit Partnership, L. P., Elizabeth R. Rees, and Winship Rees, in his individual capacity and in his capacity as trustee of The Thomas Frithjoff Rees Revocable Trust (collectively "Larkabit"). Toll Brothers, Inc. claimed that it had an agreement with Larkabit for the purchase of the property and filed suit after Larkabit failed to attend the closing. Following cross-motions for summary judgment, the trial court granted summary judgment in favor of Larkabit on Toll's claims for breach of contract, fraud, fraud in

the inducement, and negligent misrepresentation, but denied summary judgment on its claims for promissory estoppel, unjust enrichment, and attorney fees.

On appeal, in Case No. A25A0028, Toll contends that the trial court erred by granting summary judgment on its breach of contract claim and its claims for fraud and negligent misrepresentation. In Case No. A25A0029, Larkabit cross-appeals and contends that the trial court erred by denying its motion for summary judgment on Toll's claims for promissory estoppel, unjust enrichment and attorney fees. For the following reasons, in Case No. A25A0028, we affirm and in Case No. A250029, we reverse in part and affirm in part.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). "We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party." *6428 Church Street, LLC v. SM Corrigan, LLC*, 352 Ga. App. 437, 437–38 (834 SE2d 603) (2019).

So viewed, the evidence showed that on August 4, 2020, The Larkabit Partnership and Toll executed a document entitled "Agreement of Sale." The Agreement described the land to be sold as "all but +/- 20 (for a total of approximately 114 acres) acres of that certain parcel of land that is approximately 134 acres located on Settles Bridge Road, in the City of Suwanee, Gwinnett County (the "County"), in the State of Georgia[.]" In lieu of defining the "approximately 114 acres" subject to sale and the "+/- 20 acres" not subject to sale, the parties agreed to:

> within Sixty (60) days of the Effective Date on (A) the total acreage that shall be conveyed to Buyer, which portion shall hereinafter be referred to as the "Property[,]" and (B) a plan depicting (1) the total acreage of the Property, (2) which specific acres of such total acreage are being conveyed at each of the First Closing, Second Closing, Third Closing, and Final Closing, (3) the easements (pursuant to Section 4(d) below, and (4) the grading and earthwork (pursuant to Section 4(e) below), and such a plan shall be attached hereto as *Exhibit B* . . . . Seller shall retain +/- 20 acres ("Seller's Retained Parcel").

After defining the "Property" and "Exhibit B," the parties were required under the Agreement to "execute an amendment to this Agreement within ten (10) days after they have agreed on Exhibit B as set forth above, which amendment shall identify

3

Exhibit B and the aforementioned easements, and grading and earthwork." It is undisputed that Exhibit B was never executed.

While most of the property at issue is titled in The Larkabit Partnership's name, smaller portions belong to Elizabeth Rees and to Winship Rees, as trustee of the Thomas Frithjoff Rees Revocable Trust dated July 3, 2017. Prior to executing the Agreement, The Larkabit Partnership provided Toll with a title commitment from a prior potential sale and Toll obtained its own title commitment, both title commitments showed that the land was not owned solely by The Larkabit Partnership. Despite the fact that the property was not solely owned by The Larkabit Partnership, The Larkabit Partnership was the only party to the agreement, Elizabeth Rees signed only as a witness.

The Agreement provided that Toll would pay Larkabit an initial deposit of $10,000, monthly deposits of $5,000, and a deposit of $100,000 upon receipt of a rezoning approval. In the Agreement, the initial deposit, the monthly deposits, and the additional rezoning deposit are collectively referred to as the "Deposit." The Agreement provided that the Deposit "shall be credited against the Purchase Price at

the first Closing. The Deposit shall be refundable to [Toll] only if [Larkabit] defaults under the terms of this Agreement."

Regarding potential rezoning of the Property, the Agreement provided that

[Larkabit] will cooperate, at no cost to [Larkabit], with [Toll's] efforts to obtain final, unconditional, and unappealable rezoning of the Property to a zoning classification in [Toll's] sole discretion that permits the Property to be developed with a minimum density of 1.9 Lots per acre on which single-family detached dwellings can be constructed (the **"Rezoning Approval"**).

Toll began the rezoning process in December 2021. In June 2021, during the pendency of the rezoning process, Winship Rees sent Toll an email stating, "[p]lease send the contemplated revised plan, even if not complete. If the [rezoning is] approved, we still have to agree on an Exhibit B, infrastructure easements, etc." Toll ultimately withdrew the first rezoning application and proceeded with a second rezoning application. The City of Suwanee approved the second rezoning application "on property described on the attached legal description" subject to several conditions. No legal description, however, is attached to the approval.

Three months after signing the Agreement, Larkabit sent Toll the following email:

5

Wouldn't it be prudent for Toll and us to agree on some things, e. g., how many acres we're keeping, where those acres are located, where the easements are going, etc? I mentioned this before we signed the contract and was told that Toll expected to present it within 10 days after signing the contract. When I gave you the legal which showed a 15 acre parcel in back I specifically told you that was not all the land we were planning on keeping and to make sure Toll knew that. We may be fine with Toll's plan but not having ever seen it we may not be. It seems imprudent for Toll to go to all this time and expense without our first agreeing on the preliminary matters.

The following day, Larkabit sent another email stating,

[w]e did not agree on the number of acres. In fact, at that meeting I told you again that the retained portion needs to include acreage west of what is/was shown [because] our son wants to retain the mill and build his house south of it. . . . Before signing the contract and since, we've urged Toll to resolve fundamental preliminary matters. Toll has chosen not to at its own peril.

Larkabit was still referencing Exhibit B and the fact that it had yet to be executed in January 2022, when it emailed Toll that "[o]nce Exhibit 'B' is done a lot of [Larkabit's] concern would probably be ameliorated." In a response approximately a month later, Toll stated that "Exhibit B cannot be finalized until the LDP plans are finalized." Approximately three weeks later, the director of land acquisition for Toll

6

emailed Toll colleagues regarding an extension on closing. The director explained "[w]e are preparing to close this prior to the end of the cure period. To do so, we need to complete the Exhibit B of the contract which outlines the acreage purchased in each of the [four] takes."

In May 2022, Toll wrote to Larkabit notifying it that Toll intended to close on a portion of the Property. In reply, Larkabit sent notice that it was

> ready, willing and able to close, but before any closing and for the Agreement to continue Toll must cure the following defaults within 30 days. As required by Paragraph 1(A) the Parties must agree on the total acreage and (B), a plan that addresses subparagraphs 1, 2, 3, and 4 in (B), and attach the plan to the Agreement as Exhibit B. As required by Paragraph 4 (b) as amended by Paragraph 2 of the Third Amendment to Agreement of Sale, Toll has not timely closed. As required by Paragraph 4 (d) easements have not been approved by the Seller in writing. As required by Paragraph (e) an easement agreement has not been accepted by Seller. As required by Paragraph 4 (a) the purchase price for additional acres must be correct. [Larkabit] insists on strict compliance and adherence to the terms of the Agreement and intends to rely on the exact terms of the Agreement.

Approximately one month later, Toll responded to Larkabit's allegations of various events of default. In that letter, Toll contends that the parties mutually

7

departed from the requirement of executing Exhibit B. Toll stated that it was electing to purchase the entire Property at one closing, which it would conduct no later than June 24, 2022. Ultimately, Larkabit failed to show up at the closing.

Toll filed suit for breach of contract, fraud, fraud in the inducement, negligent misrepresentation, promissory estoppel, unjust enrichment, and attorney fees. Larkabit filed a motion for summary judgment on all claims and Toll moved for summary judgment on its breach of contract claim. The trial court granted summary judgment in favor of Larkabit on Toll's claims for breach of contract, fraud, fraud in the inducement, and negligent misrepresentation, but denied summary judgement on Toll's claims for promissory estoppel, unjust enrichment, and attorney fees.

Case No. A29A0028

1. Toll contends that the trial court erred by granting summary judgment in favor of Larkabit on its claim for breach of contract.

"[C]ontract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court." *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307-308 (1) (590 SE2d 260) (2003). "The statute of frauds requires that a contract for the sale of land, or an

option to purchase land, be in writing." *Makowski v. Waldrop*, 262 Ga. App. 130, 132 (1) (a) (584 SE2d 714) (2003). "To satisfy the statute, the sales or purchase option contract must contain a clear and definite description of the property. Although the description need not be perfect, the contract must furnish the key to the identification of the land intended to be conveyed by the grantor. (Citation and punctuation omitted.) Id. "[T]he party asserting the existence of a contract has the burden of proving its existence and its terms." *Overton Apparel*, 264 Ga. App. at 308 (2).

Toll contends that the trial court ignored evidence that the parties mutually assented to all of the essential elements of the contract. The evidence was clear, however, that the parties never agreed to the exact acreage that was to be conveyed to Toll. The contract required the parties to execute Exhibit B, defining the specific acreage to be conveyed to Toll, the specific acreage to be conveyed at each closing, the easements, and the grading and earthwork. It is undisputed that this crucial document was never executed despite Larkabit's repeated reminders to Toll that there was no agreement as to the amount of acreage. Here, there was no evidence of more than an agreement to agree. Accordingly, the trial court did not err when it determined that the Agreement did not describe the Property subject to it and that that defect barred

any effort to enforce the Agreement. See *Scheinfeld v. Murray*, 267 Ga. 622, 623 (1) (481 SE2d 194) (1997) ("The trial court did not err when it determined that the agreement for the sale of real estate was void for want of a sufficient description."); *Miami Heights LT v. Home Depot U. S. A.*, 283 Ga. App. 779, (643 SE2d 1) (2007) ("In Georgia, a contract requires agreement on all essential terms and the failure to agree to even one essential term means that there is no agreement to be enforced. If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable agreement to agree.") (citation and punctuation omitted.).

2. In one enumerated error, Toll contends that the trial court erred by granting Larkabit's motion for summary judgment on its claims for fraud and negligent misrepresentation.

"The tort of fraud, including fraudulent inducement, has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citation and punctuation omitted.) *Najarian Capital v. Clark*, 357 Ga. App. 685, 688-89 (2) (849 SE2d 262) (2020). "Liability for a negligent representation attaches when a

defendant makes a false representation upon which the plaintiff relies." *Global Payments v. InComm Financial. Servs.*, 308 Ga. 842, 845 (843 SE2d 821) (2020). "Under Georgia law, in advancing either a claim for fraud or negligent misrepresentation, a plaintiff must establish that the defendant made false representations on which the plaintiff justifiably relied." (Citation and punctuation omitted.) Id. Toll cannot establish that Larkabit made a false representation on which it justifiably relied.

(a) Toll's fraud claim is premised upon Larkabit's statement in its notice of default that it was "ready, willing and able to close." Toll argues that this statement was materially false and misleading. We disagree. Toll omits the entirety of the notice of default which stated that before any closing could occur, Toll must cure several defaults, including the execution of Exhibit B.

> The tort of fraud, including fraudulent inducement, has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. Although OCGA § 9-11-9 (b) requires that claims of fraud be pled with particularity, a complaint alleging fraud should not be dismissed for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of his claim which would entitle him to relief.

11

(Citation and punctuation omitted.) *Najarian Capital v. Clark*, 357 Ga. App. 685, 688-89 (2) (849 SE2d 262) (2020).

"Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence." (Citation and punctuation omitted.) *Reeves v. Edge*, 225 Ga. App. 615, 618 (2) (484 SE2d 498) (1997). "When the means of knowledge are at hand and equally available to both parties to a contract of sale, if the purchaser does not avail himself of these means, he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller." (Citation and punctuation omitted.) Id.

Toll's fraud claim also fails because "a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events. Representations concerning expectations and hopes are not actionable." *Infrasource Inc. v. Hahn Yalena Corp.*, 272 Ga. App. 703, 707 (2) (613 SE2d 144) (2005). Larkabit's notice of default letter was conditioned upon Toll curing

the listed defaults and then Larkabit would proceed to close. A representation made as to future acts cannot sustain a fraud claim. See id.

(b) Toll's fraud in the inducement and negligent misrepresentation claims against Larkabit and Winship Rees were based on statements in the Agreement that Larkabit was the sole owner of the Property. Under Georgia law,

> [i]n the sale of land, the purchaser contracts with [its] eyes open; and, if [it] is not in some way deprived of the opportunity of inspecting the land for [itself] by the fraudulent acts or conduct of the vendor, [it] will not be heard to complain. As to such things as quality and condition which are open to inspection, [it] is willfully negligent if [it] fails to look and see for [itself].

(Citation and punctuation omitted.) *Marion A. Allen v. Johnston*, 371 Ga. App. 856, 860 (903 SE2d 334) (2024).

Here, prior to signing the Agreement, Toll was aware that the Property was not solely owned by Larkabit. Larkabit provided Toll with a title commitment from a prior potential sale and Toll obtained its own title agreement, and both title commitments showed that the Property had multiple owners. Accordingly, Toll failed to exercise due diligence and thus, its claim for fraud in the inducement and negligent

misrepresentation fail as a matter of law. See *Marion A. Allen*, 371 Ga. App. at 860; *Fowler v. Overby*, 223 Ga. App. 803, 804 (1) (478 SE2d 919) (1996).

*Case No. A25A0029*

3. Larkabit contends that the trial court erred by failing to grant its motion for summary judgment on Toll's claim for promissory estoppel.

"To prevail on [its] promissory estoppel theory, [Toll] must show that [Larkabit] made certain promises, it should have expected [Toll] to rely on these promises, and [Toll] did rely on them to their detriment." *Parker v. Peaceful Valley Prop. Owners Assoc.*, 271 Ga. 325, 326 (2) (519 SE2d 440) (1999), disapproved of on other grounds by *Gilliam v. State*, 312 Ga. 60 (860 SE2d 543) (2021). Promissory estoppel requires reasonable reliance. See *Blau v. Blau*, 368 Ga. App. 701, 706 (1) (890 SE2d 50) (2023). "[Reasonable reliance] means the plaintiff relied exclusively on such promise and not on his or her own preconceived intent or knowledge; that the plaintiff exercised due diligence, so as to justify such reliance as a matter of equity; and that there was nothing under the circumstances which would prevent the plaintiff from relying to his detriment." (Citation and punctuation omitted.) Id.

14

In its complaint, Toll alleges that Larkabit promised to convey the Property to Toll in exchange for the purchase price and that Toll relied on this promise to its detriment. We disagree. Toll has failed to show reasonable reliance on Larkabit's promise. As discussed above, Toll and Larkabit never executed Exhibit B to the Agreement defining the actual Property to be conveyed to Toll. Larkabit repeatedly urged Toll to reach an agreement on the acreage being sold. Larkabit queried Toll in an e-mail as to whether it would be prudent to agree on the acreage being conveyed before Toll spent time and expense without an agreement on preliminary issues. Accordingly, the trial court erred by failing to grant summary judgment to Larkabit on Toll's promissory estoppel claim. See *Hewitt Assoc. v. Rollins Inc.*, 294 Ga. App. 600, 603 (2) (669 SE2d 551) (2008) (finding that the trial court properly granted summary judgment on a promissory estoppel claim when it was predicated upon a mere agreement to agree).

4. Larkabit contends that the trial court erred by failing to grant its motion for summary judgment on Toll's claim for unjust enrichment.

"The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred

benefits when there was no legal contract to pay." (Citation and punctuation omitted.) *Morris v. Britt*, 275 Ga. App. 293, 294 (1) (620 SE2d 422) (2005). "The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." (Citation and punctuation omitted). Id. "For unjust enrichment to apply, the party conferring the labor and things of value must act with the expectation that the other will be responsible for the cost." (Citation and punctuation omitted.) Id. "Otherwise, that party, like one who volunteers to pay the debt of another, has no right to an equitable recovery." Id. Here, Toll argues that Larkabit encouraged Toll to provide something of value, the rezoning of the property and the deposits paid under the Agreement.

(a) The rezoning of the property. The evidence shows that Toll acted without any expectation that Larkabit would be responsible for the cost. Toll failed to protect its own investment by executing Exhibit B which was clearly required for the Agreement to be enforceable. Accordingly, under these circumstances, the trial court erred by failing to grant summary judgment to Larkabit on Toll's unjust enrichment claim regarding the rezoning of the property. See *Morris*, 275 Ga. App. at 294-295 (1);

*Hollifield v. Monte Vista Biblical Gardens*, 251 Ga. App. 124, 131 (2) (c) (553 SE2d 662) (2001).

(b) The deposits. Here, the Agreement provided that Toll would pay Larkabit an initial deposit of $10,000, monthly deposits of $5,000, and a deposit of $100,000 upon receipt of a rezoning approval. The record shows that Toll paid $145,000 in deposits to Larkabit. The deposits were to be credited against the purchase price at the first closing.

The evidence that Toll paid Larkabit $145,000 in deposits under the Agreement, and that Larkabit retained the money without selling the property to Toll, raises a factual issue regarding whether Larkabit was unjustly enriched at Toll's expense. Therefore, the trial court correctly denied Larkabit's motion for summary judgment on this matter. See *Farmer v. Farmer*, 371 Ga. App. 156, 162-163 (3) (899 SE2d 780) (2024); *Crook v. Foster*, 333 Ga. App. 36, 40 (1) (775 SE2d 286) (2015).

5. Larkabit contends that the trial court erred by failing to grant its motion for summary judgment on Toll's claim for attorney fees.

Since Toll's claim for unjust enrichment partially survives, the trial court correctly denied summary judgment in favor of Larkabit on Toll's claim for attorney

fees under OCGA § 13-6-11. See *William Goldberg & Company*, 219 Ga. App. 628, 635 (4) (466 SE2d 872) (1995).

*Judgment affirmed in Case No. A25A0028; Judgment affirmed in part and reversed in part in Case No. A25A0029. Gobeil and Davis, JJ., concur.*