## S16A0655. McHUGH FULLER LAW GROUP, PLLC v. PRUITTHEALTH, INC.
### (794 SE2d 150)

NAHMIAS, Justice.

In March 2015, McHugh Fuller Law Group, PLLC ("McHugh Fuller") began running a month-long, statewide Georgia advertising campaign targeting PruittHealth, Inc., f/k/a Pruitt Corporation and its affiliated nursing homes (collectively, "PruittHealth"). Pruitt-Health filed suit against McHugh Fuller under Georgia's trademark anti-dilution statute, OCGA § 10-1-451 (b), in the Superior Court of Colquitt County, and the trial court entered a permanent injunction prohibiting McHugh Fuller from running ads about PruittHealth that include the company's trade names, service marks, or logos. As explained below, the single advertisement that PruittHealth challenges did not violate OCGA § 10-1-451 (b). Accordingly, we reverse the trial court's injunction order.

1. On March 15, 2015, McHugh Fuller, a Mississippi law firm that focuses on suing nursing homes, ran the following full-page, color advertisement in the Sunday print and online editions of the Moultrie Observer newspaper as part of a month-long, statewide ad campaign targeting nursing homes affiliated with PruittHealth, Inc.:

# ATTENTION!

**McHugh Fuller Law Group, PLLC**
is currently accepting cases against
**PRUITTHEALTH - MOULTRIE**

( Formerly known as
**UniHealth Post-Acute Care - Moultrie** )

for resident care related issues.

If you suspect that a loved one was
**NEGLECTED** or **ABUSED**
at PruittHealth - Moultrie,
call **McHugh Fuller** today!

Has your loved one suffered

**Bedsores**

**Broken Bones**

**Unexplained Injuries**

Even **Death!**

If so, please call us at

# 1-800-939-5580

97 Elm Whiddon Road • Hattiesburg, Mississippi 39402

This is an advertisement.
Michael J. Fuller is responsible for the content of this advertisement

On March 31, 2015, PruittHealth filed a one-count complaint against McHugh Fuller for trademark dilution, seeking interlocutory and permanent injunctive relief under OCGA § 10-1-451 (b). Pruitt-Health also requested a temporary restraining order, which the trial court issued on the same day. On April 20, McHugh Fuller filed an answer raising First Amendment, fair use, and numerous other legal and factual defenses. On May 5, the trial court held a consolidated hearing on PruittHealth's requests for interlocutory and permanent injunctive relief.[1]

At the May 5, 2015 hearing, PruittHealth introduced copies of its trademark registrations with the United States Patent and Trademark Office, the Georgia Secretary of State, and Stephens County. Nick Williams, PruittHealth, Inc.'s chief development officer in charge of branding, testified that PruittHealth had made substantial investments in its marks, including engaging a national marketing firm, conducting focus groups, and obtaining feedback regarding their strength, and that the marks are used on billboards, in advertisements, on mouse pads and water bottles, and in a host of other marketing materials used by PruittHealth in Georgia and surrounding states. Williams further testified that McHugh Fuller's March 2015 ad campaign, by associating PruittHealth's marks with brightly colored words like death, tarnishes the marks and PruittHealth's business reputation, noting that hospitals, the major referral source for nursing home patients, had contacted him personally for an explanation.

Vickie Patterson, the administrator of PruittHealth-Moultrie for 23 years, and Mirandus Ponder, a nursing aide and a lifelong resident of Moultrie, testified that in their view, the March 15 ad in the Moultrie Observer had harmed their facility's reputation and identity in the community. Patterson said that she received multiple text messages about the ad on the day that it ran and that "[p]eople that see this ad that don't know us would believe that we're a bad facility." Ponder said that she learned of the March 15 ad when she was in the checkout line at a grocery store and overheard a woman ask another

---

[1] McHugh Fuller objected to consolidating the permanent injunction trial with the interlocutory injunction hearing without allowing full discovery, and the law firm enumerated the trial court's denial of that objection as error in its brief on appeal. However, at oral argument, McHugh Fuller explicitly abandoned this challenge to the permanent injunction, so we will not address it further. Cf. *McHugh Fuller Law Group, PLLC v. PruittHealth-Toccoa, LLC*, 297 Ga. 94, 96-98 (772 SE2d 660) (2015) (vacating permanent injunction issued under Georgia's Uniform Deceptive Trade Practices Act after an earlier month-long, statewide ad campaign targeting PruittHealth, because the trial court failed to provide McHugh Fuller with proper notice that it would decide permanent as well as interlocutory injunctive relief at the hearing).

woman if she had "read the advertisement of PruittHealth abusing their residents." Ponder added, "I'm there, and I know that [patients are] being taken care of. And it just breaks my heart to have people thinking that that's what's going on."

McHugh Fuller presented numerous exhibits and the testimony of Michael J. Fuller, one of the law firm's two partners and the person listed in the March 15 ad as being responsible for its content.[2] Fuller explained how his firm uses information from a federal government website, including annual nursing home survey results, staffing levels, and quality measures, to identify facilities that the firm believes are likely to have residents who have been injured through negligence. Fuller testified that since running ads targeting specific PruittHealth facilities in 2014, McHugh Fuller had received about 200 calls from potential clients, was engaged by roughly 50 clients, and filed about 11 negligence lawsuits against PruittHealth alleging that patients had suffered bedsores, broken bones, unexplained injuries, or death.

On June 1, 2015, the trial court entered the order on appeal. The court found that

> Defendant's unauthorized use of Plaintiff's service marks, trade names and related logos in its advertisements likely tarnish Plaintiff's and its affiliates' business reputation [and] likely dilute those marks and names, and that Plaintiff is likely to suffer immediate and irreparable harm to its goodwill and contractual and business relationships through Defendant's unauthorized use in its advertisements of service marks and trade names used and adopted by Plaintiff, thereby violating OCGA § 10-1-451 (b).

The court permanently enjoined McHugh Fuller from running ads concerning PruittHealth that include PruittHealth's trade names, service marks, or logos. On June 22, 2015, McHugh Fuller filed a motion to amend or for reconsideration, which the trial court denied on June 30, 2015. McHugh Fuller filed a timely notice of appeal to this Court, and the case was orally argued here on April 27, 2016.

2. This Court has addressed Georgia's anti-dilution statute on several occasions. See *India-American Cultural Assn., Inc. v. iLink Professionals, Inc.*, 296 Ga. 668, 673 (769 SE2d 905) (2015); *Giant Mart Corp. v. Giant Discount Foods, Inc.*, 247 Ga. 775, 776 (279 SE2d 683) (1981); *Multiple Listing Svc., Inc. v. Metro. Multi-List, Inc.*, 223

---

[2] Fuller and his partner James McHugh are members of the Georgia Bar.

Ga. 837, 840-843 (159 SE2d 52) (1968); *Dolphin Homes Corp. v. Tocomc Dev. Corp.*, 223 Ga. 455, 457-458 (156 SE2d 45) (1967). However, this case presents a scenario that we have not previously encountered, where one business (McHugh Fuller) is using the marks of a second business (PruittHealth) not to identify its own goods or services, but rather to identify the goods or services of the second business. Thus, as we have in the past when interpreting Georgia trademark law, we look for guidance to general principles of American trademark law as reflected in persuasive federal precedents interpreting Georgia's and other jurisdictions' anti-dilution statutes and in trademark law treatises. See, e.g., *Reis v. Ralls*, 250 Ga. 721, 722-723 (301 SE2d 40) (1983); *Kay Jewelry Co. v. Kapiloff*, 204 Ga. 209, 212-213 (49 SE2d 19) (1948). See also *Ackerman Security Systems v. Design Security Systems*, 201 Ga. App. 805, 806 (1) (412 SE2d 588) (1991) (following Eleventh and old Fifth Circuit precedents applying Georgia trademark law).

Trademark law is part of the broader law of unfair competition. See *Moseley v. V Secret Catalogue, Inc.*, 537 U. S. 418, 428 (123 SCt 1115, 155 LE2d 1) (2003); *Saunders System Atlanta Co. v. Drive It Yourself Co. of Ga.*, 158 Ga. 1, 1-2 (123 SE 132) (1924). "The principle underlying trademark protection is that distinctive marks — words, names, symbols, and the like — can help distinguish a particular artisan's goods from those of others." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, ___ U. S. ___ (135 SCt 1293, 1299, 191 LE2d 222) (2015). American trademark *infringement* law "broadly prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service," thereby "protect[ing] consumers from being misled by the use of infringing marks and also protect[ing] producers from unfair practices by an 'imitating competitor.' " *Moseley*, 537 U. S. at 428 (citation omitted). Trademark infringement law's likelihood-of-consumer-confusion test mitigates potential conflicts between trademark protection and the First Amendment. See *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U. S. 522, 535 n. 12 (107 SCt 2971, 97 LE2d 427) (1987) (noting that "[t]he Government constitutionally may regulate 'deceptive or misleading' commercial speech"). See also *Mattel, Inc. v. MCA Records, Inc.*, 296 F3d 894, 904-905 (9th Cir. 2002).

In 1946, Congress largely codified traditional trademark infringement law in the Lanham Act, Pub. L. No. 79-489, 60 Stat. 427. But Congress resisted calls to include a cause of action for trademark *dilution*, which lacks a common-law foundation and is not motivated by an interest in protecting customers. See *Moseley*, 537 U. S. at 428-429; Walter J. Derenberg, The Problem of Trademark Dilution

and the Antidilution Statutes, 44 Cal. L. Rev. 439, 440-441 (1956).[3] The following year, Massachusetts adopted the first state statute protecting trademarks from dilution. See *Moseley*, 537 U. S. at 430. See also *Kapiloff*, 204 Ga. at 213, 216 (referring, in a 1948 decision, to the concept of trademark dilution).

In 1952, the General Assembly overhauled Georgia's statutory trademark scheme to conform to the Lanham Act in the Trade-Mark Act of 1952. See Ga. L. 1952, p. 134. See also Derenberg, 44 Cal. L. Rev. at 439-440 & n. 6 (discussing the revision of state trademark statutes in response to the Lanham Act). Like the Lanham Act, the Trade-Mark Act of 1952 initially did not incorporate the concept of trademark dilution, but in 1955, the General Assembly enacted Georgia's anti-dilution statute as an amendment to the Trade-Mark Act. See Ga. L. 1955, p. 453. See also Derenberg, 44 Cal. L. Rev. at 441 & n. 7 (discussing the adoption of the early state anti-dilution statutes, including Georgia's). Georgia's anti-dilution statute, which is the sole basis for PruittHealth's complaint against McHugh Fuller, is now codified without substantive amendment at OCGA § 10-1-451 (b), amidst the rest of Georgia's statutory trademark scheme. See generally OCGA §§ 10-1-440 to 10-1-454.

OCGA § 10-1-451 (b) says in full:

> Every person, association, or union of working men adopting and using a trademark, trade name, label, or form of advertisement may proceed by action; and all courts having jurisdiction thereof shall grant injunctions to enjoin subsequent use by another of the same or any similar trademark, trade name, label, or form of advertisement if there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the trademark, trade name, label, or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services, except that this Code section shall not deprive any party of any vested lawful rights acquired prior to March 4, 1955.

---

[3] In 1996, Congress amended the Lanham Act to include a federal cause of action for trademark dilution. See Federal Trademark Dilution Act of 1995 (FTDA), Pub. L. No. 104-98, 109 Stat. 985. In 2006, Congress substantially revised the FTDA. See Trademark Dilution Revision Act of 2006 (TDRA), Pub. L. No. 109-312, 120 Stat. 1730 (codified at 15 USC § 1125 (c)). PruittHealth did not include a federal trademark dilution claim in its complaint against McHugh Fuller.

Under this statute, actionable trademark dilution can take two forms:

> The first is a "blurring" or "whittling down" of the distinctiveness of a mark. This can occur where the public sees the mark used widely on all kinds of products. The second type of dilution is tarnishment which occurs when a defendant uses the same or similar marks in a way that creates an undesirable, unwholesome, or unsavory mental association with the plaintiff's mark.

*Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.,* 642 FSupp. 1031, 1039 (N.D. Ga. 1986). See Restatement (Third) of Unfair Competition § 25 (1) (a), (b) (1995) (Mar. 2016 update) (hereinafter Restatement); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:67 (4th ed. Mar. 2016 update) (hereinafter McCarthy); 2 Anne Gilson LaLonde, Gilson on Trademarks § 5A.01 [2] (2016) (hereinafter Gilson). See also 6 Louis Altman & Malla Pollack, Callmann on Unfair Competition, Trademarks and Monopolies § 22:17 (4th ed. June 2016 update) (hereinafter Callmann) ("Dilution threatens two separable but related components of advertising value: it may blur a mark's product identification, or it may tarnish the affirmative associations a mark has come to convey." (footnotes omitted)).

At issue in this case is tarnishment, which OCGA § 10-1-451 (b) describes as "subsequent use by another of the same or any similar trademark, trade name, label, or form of advertisement" adopted and used by a person, association, or union "if there exists a likelihood of injury to business reputation . . . of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services[.]" See *Moseley,* 537 U. S. at 432 (suggesting that references to "injury to business reputation" in state anti-dilution statutes like Georgia's are the textual basis for trademark tarnishment claims). This theory of liability "has had some success when defendant has used plaintiff's mark as a mark for clearly unwholesome or degrading goods or services." 4 McCarthy § 24:70. See, e.g., *Original Appalachian Artworks,* 642 FSupp. at 1040 (involving a defendant's " 'borrowing plaintiff's good will to make it the butt of a joke' " (citation omitted)). The Restatement explains:

> The selling power of a trademark . . . can be undermined by a use of the mark with goods or services such as illicit drugs or pornography that "tarnish" the mark's image through

inherently negative or unsavory associations, or with goods or services that produce a negative response when linked in the minds of prospective purchasers with the goods or services of the prior user, such as the use on insecticide of a trademark similar to one previously used by another on food products.

Restatement § 25 cmt. c. The basic idea is that "the consumer's distaste for the unsavory or inferior product has 'rubbed off' on the famous trademark, thereby damaging it." Sandra L. Rierson, The Myth and Reality of Dilution, 11 Duke L. & Tech. Rev. 212, 246 (2012).

However, not every unwelcome use of one's trademark in the advertising of another provides a basis for a tarnishment claim. See 6 Callmann § 22:19. Tarnishment can occur "only if the defendant uses the designation as its own trademark for its own goods or services." 4 McCarthy § 24:122. "[C]ases in which a defendant uses the plaintiff's mark to refer to the plaintiff in a context that harms the plaintiff's reputation are not properly treated as tarnishment cases." 2 Gilson § 5A.01 [6]. See Restatement § 25 cmt. i ("[E]xtension of the antidilution statutes to protect against damaging nontrademark uses raises substantial free speech issues and duplicates other potential remedies better suited to balance the relevant interests.").

Here, McHugh Fuller was advertising its legal services to individuals who suspect that their loved ones have been harmed by negligent or abusive nursing home services at a specific PruittHealth nursing home. The ad used PruittHealth's marks in a descriptive manner to identify the specific PruittHealth facility; indeed, McHugh Fuller was counting on the public to identify PruittHealth-Moultrie by the PruittHealth marks used in the ad. The ad did not attempt to link PruittHealth's marks directly to McHugh Fuller's own goods or services. McHugh Fuller was advertising what it sells — legal services, which are neither unwholesome nor degrading — under its own trade name, service mark, and logo, each of which appears in the challenged ad. No one reading the ad reproduced above would think that McHugh Fuller was doing anything other than identifying a health care facility that the law firm was willing to sue over its treatment of patients. In short, the ad very clearly was an ad for a law firm and nothing more.

PruittHealth has cited no case analogous to this one to support its position. PruittHealth relies on *Original Appalachian Artworks*, but there a federal district court found tarnishment under Georgia's anti-dilution statute because the defendant's "Garbage Pail Kids" cards and stickers "derisively depict[ed] dolls with features similar to

[the plaintiff's] Cabbage Patch Kids dolls in rude, violent and frequently noxious settings." 642 FSupp. at 1032, 1040. PruittHealth also cites *Pillsbury Co. v. Milky Way Productions, Inc.*, No. C78-679A, 1981 WL 1402 (N.D. Ga. Dec. 24, 1981), but there the district court found tarnishment under Georgia's anti-dilution statute because the defendant used Pillsbury's "Poppin' Fresh" and "Poppie Fresh" trade characters along with its trademark and jingle in a highly sexualized and "depraved context" in the magazine *Screw*. Id. at *14. And in *NBA Properties v. Untertainment Records LLC*, No. 99 Civ. 2933 (HB), 1999 WL 335147 (S.D.N.Y. May 26, 1999), the district court found tarnishment under federal and New York law where the defendant juxtaposed a distorted NBA logo containing the silhouetted basketball player with a gun in his right hand and the words "SPORTS, DRUGS, & ENTERTAINMENT." Id. at *9. See also *PepsiCo, Inc. v. #1 Wholesale, LLC*, No. 07-CV-367, 2007 WL 2142294, at *1-2, 4 (N.D. Ga. July 20, 2007) (finding tarnishment under federal law and OCGA § 10-1-451 (b) where the defendants advertised and sold bottle, can, and food canister safes for the concealment of illicit narcotics manufactured using plaintiff PepsiCo's products and bearing its famous Pepsi, Doritos, and other trademarks); Rierson, 11 Duke L. & Tech. Rev. at 247 n. 125 (collecting additional cases where dilution by tarnishment has been found, all of which involve the defendant's association of a mark with sex or illegal drugs).

Contrary to PruittHealth's assertion in the trial court, trademark law does not impose a blanket prohibition on referencing a trademarked name in advertising. "Indeed, it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference, or any other such purpose without using the mark." *New Kids on the Block v. News America Publishing Inc.*, 971 F2d 302, 306 (9th Cir. 1992). Moreover, interpreting OCGA § 10-1-451 (b) expansively to prohibit the use of PruittHealth's marks to identify its facilities and services in any way, as the company urges, would raise profound First Amendment issues. See *Mattel*, 296 F3d at 904 (explaining that reading the federal anti-dilution statute to prohibit all unauthorized use of trademarks "would . . . create a constitutional problem"). See also *Florida Bar v. Went For It, Inc.*, 515 U. S. 618, 623 (115 SCt 2371, 132 LE2d 541) (1995) ("It is now well established that lawyer advertising is commercial speech and, as such, is accorded a measure of First Amendment protection."). "Much useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark." *New Kids on the Block*, 971 F2d at 307. Accordingly, the trial court erred in entering the permanent injunction against McHugh

Fuller based on OCGA § 10-1-451 (b).[4] If PruittHealth believes that McHugh Fuller's advertisements are untruthful or deceptive, the company must seek relief under some other statutory or common-law cause of action.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 21, 2016.

*Carlock, Copeland & Stair, Shannon M. Sprinkle, Tyler J. Wetzel; Flynn Peeler Phillips, Charles E. Peeler,* for appellant.

*Arnall Golden Gregory, Jason E. Bring, J. Ryan Hood, Richard A. Mitchell; Coleman Talley, Gregory T. Talley,* for appellee.

---

[4] In light of this conclusion, we need not decide whether, as McHugh Fuller contends, OCGA § 10-1-451 (b) includes an implicit fair use defense like the express defense in the federal TDRA. See 15 USC § 1125 (c) (3).