313 Ga. 305
FINAL COPY

S21G0798. EDIBLE IP, LLC v. GOOGLE, LLC.

MCMILLIAN, Justice.

This case involves Google LLC's application of Internet search algorithms, which it uses to auction off search terms for profit to advertisers, and the interests of Edible IP, LLC, which seeks to exercise control over the profit generated from its trade name and associated goodwill. In 2018, Edible IP brought an action against Google arising from Google's monetization of the name "Edible Arrangements" without permission in its keyword advertising program. Google moved to dismiss the complaint, or in the alternative, to compel arbitration. The trial court granted the motion, dismissing the complaint on several grounds, including that it failed to state a claim, and alternatively compelling the parties to arbitration. Edible IP appealed from that order, and the Court of Appeals affirmed the dismissal for failure to state a claim. See

*Edible IP, LLC v. Google, LLC*, 358 Ga. App. 218 (854 SE2d 565) (2021). We granted certiorari to address whether the trial court properly granted Google's motion to dismiss.[1] For the reasons that follow, we conclude that Edible IP has not stated a cognizable claim for relief and therefore affirm.

The Court of Appeals summarized the relevant facts underlying this appeal as follows:

> [T]he complaint alleges that Edible IP owns the trademarks, trade names, and other intellectual property associated with Edible Arrangements, a business consisting of websites and "brick-and-mortar" franchises that sell, among other things, floral-shaped arrangements of fresh-cut fruit. To support these websites and franchises, Edible IP licenses the use of its intellectual property to various entities. Edible IP, however, maintains ownership of the intellectual property, which includes the trademark/trade name "Edible Arrangements," as well as the goodwill generated by the brand.
> Google operates an Internet search engine that allows individuals to search for information by typing relevant words into a search bar. Using algorithms that analyze the search terms and requested information, Google returns "organic" results of the query on a results page. According to the complaint, Google monetizes its search engine by "sell[ing] . . . 'keywords'" to advertisers

---

[1] We are aided in this endeavor by amicus curiae briefs filed by the International Franchise Association and the Internet Association.

that "trigger advertisements on the search results page when Google users search for the keyword term."

Keyword advertising is purchased through an auction-like process, with prospective advertisers bidding on terms suggested by Google. The auction includes general terms like "shoes" and "mother's day gift," as well as trade names such as "Edible Arrangements." Google has never contracted with Edible IP for the right to use the Edible Arrangements trade name, and Edible IP has not otherwise given Google permission to include its trade name in the keyword advertising program. Nevertheless, Google began auctioning the trade name to advertisers in approximately 2011. As described by the complaint, Google places advertisements purchased through the keyword program "in a more attractive location on the results page than its 'organic' results in an effort to drive consumer behavior and get those consumers to click on the ad rather than Google's 'organic' results."

Based on these and other allegations, Edible IP sued Google for theft of personal property, conversion, money had and received, and civil [Racketeer Influenced and Corrupt Organizations ("RICO")] violations. Google moved to dismiss the complaint, arguing that any claims alleged by Edible IP needed to be arbitrated, that a forum selection clause deprived the trial court of personal jurisdiction over Google, and that the complaint failed to state a claim upon which relief could be granted. Google also requested that the trial court compel the parties to arbitration.

The trial court granted the arbitration request, determining that Edible IP was subject to an arbitration provision agreed to by one of Edible IP's affiliates, which had accepted the terms and conditions of Google's advertising program. The trial court also found that a forum selection clause within those terms and conditions

required that the litigation be filed in California. Alternatively, the court concluded that the complaint failed to state a claim.

*Edible IP*, 358 Ga. App. at 219-20.

On appeal, the Court of Appeals assumed, without deciding, that the trial court correctly determined that Edible IP was bound by the arbitration and forum selection clauses in Google's contracts with companies affiliated with Edible IP and held that Edible IP's complaint failed to state a claim upon which relief may be granted. See *Edible IP*, 358 Ga. App. at 220. We granted Edible IP's petition for certiorari to review that holding.

1. A trial court is not authorized to grant a motion to dismiss for failure to state a claim upon which relief may be granted unless:

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Global Payments, Inc. v. InComm Financial Svcs., Inc.*, 308 Ga. 842, 842-43 (843 SE2d 821) (2020) (citation and punctuation omitted).

4

And in deciding such motions, "all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor." Id. at 843 (citation and punctuation omitted). This Court reviews the grant of a motion to dismiss de novo. See *Norman v. Xytex Corp.*, 310 Ga. 127, 130 (2) (848 SE2d 835) (2020).

Edible IP insists that this case does not involve trademark infringement claims,[2] asserting instead that it is challenging Google's *direct* sale of its proprietary name and goodwill to competitors via Google's keyword advertising program and that the trial court ignored longstanding property law that guarantees a remedy for violations of property rights. Based on this theory, Edible IP has alleged four claims: (1) civil theft of personal property; (2) conversion; (3) money had and received; and (4) violations of Georgia's RICO Act. We will address each of the claims in turn.

(a) *Civil Theft of Personal Property*.

---

[2] In its complaint against Google, Edible IP specifically disavowed any such claims: "Edible IP does not assert any federal trademark infringement or federal dilution claims, nor seek any other relief for any consumer confusion."

Georgia law authorizes the owner of property to bring a civil action to recover damages from any person who either (1) willfully damages the owner's personal property or (2) commits a theft as defined in OCGA § 16-8-2. See OCGA § 51-10-6 (a). OCGA § 16-8-2, in turn, provides that

> [a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated.

In its complaint, Edible IP relied on the second method, alleging that "Google has committed theft by taking, in violation of OCGA § 16-8-2" by "unlawfully tak[ing] and otherwise appropriat[ing] Edible IP's property by selling that property without permission to others and keeping the proceeds for itself." Edible IP identified the property as its "trade name 'Edible Arrangements' and the good will and reputation associated with that name."

Noting the statutory definition of "deprive,"[3] the trial court

---

[3] In this context, "[d]eprive" means, without justification:

concluded that because Edible IP has been able to make use of its trade name over the past decade, Edible IP was unable to plead facts establishing that Google "withheld" or "disposed" of its trade name. The Court of Appeals ultimately agreed, explaining that, rather than taking Edible IP's trade name or selling it for profit, Google's conduct involves the sale and placement of advertisements, which does not constitute a taking or appropriation of Edible IP's property. See *Edible IP*, 358 Ga. App. at 221 (1).

Edible IP now argues that, in affirming the trial court's grant of Google's motion to dismiss, the Court of Appeals looked beyond the plain language of Georgia's theft statute to improperly limit its scope. On the other hand, Google asserts that OCGA § 51-10-6 was introduced in the legislature as the "Civil Shoplifting Act" to give merchants a civil remedy against shoplifters and does not cover the

---

(A) To withhold property of another permanently or temporarily; or
(B) To dispose of the property so as to make it unlikely that the owner will recover it.
OCGA § 16-8-1 (1).

use of trademarks.[4] We are, thus, first required to determine whether Edible IP's trade name and associated goodwill are "property" within the meaning of the civil theft statute and, if so, the contours of the associated property rights and whether Edible IP has sufficiently alleged that Google has wrongfully "appropriated" this property.

(i) Turning to the first question, we begin by defining several key terms. OCGA § 16-1-3 (13) broadly defines "property" as

> *anything of value*, including but not limited to real estate, tangible and *intangible personal property*, contract rights, services, choses in action, and other interests in or claims to wealth, admission or transportation tickets, captured or domestic animals, food and drink, and electric or other power.

Id. (emphasis added). A "trade name"[5] is "a word, name, symbol, device, or any combination of the foregoing in any form or arrangement used by a person to identify his business, vocation, or

---

[4] See Ga. L. 1988, p. 404, § 1; D. Johnson, Injuries to Personalty: Provide Remedy for Owners of Intentionally Damaged or Stolen Property, 5 Ga. St. U. L. Rev. 503 (1988).

[5] A "trademark" is separately defined as "a mark used by a person to identify goods and to distinguish them from the goods of others." OCGA § 10-1-371 (7).

occupation and distinguish it from . . . others." OCGA § 10-1-371 (8).

"Goodwill" has been defined as "essentially the positive reputation that a particular business enjoys. This 'positive reputation' manifests itself as an expectancy that a business has of continued patronage from its customers." 38 Am. Jur. 2d Good Will § 1 (footnote omitted). See also *Armstrong v. Atlantic Ice & Coal Corp.*, 141 Ga. 464, 466 (81 SE 212) (1914) ("Good will is the favor which the management of a business wins from the public, and the probability that old customers will continue their patronage and resort to the old place." (citation and punctuation omitted)); Goodwill, Black's Law Dictionary (11th ed. 2019) (defining goodwill as "[a] business's reputation, patronage, and other intangible assets that are considered when appraising the business").

We have expressly recognized that goodwill is a type of intangible property interest. See *Nat. Assn. for the Advancement of Colored People v. Overstreet*, 221 Ga. 16, 29 (4) (a) (142 SE2d 816) (1965) ("It is uniformly recognized that good will is a species of property and constitutes a valuable asset of the business of which it

9

is a part."). See also *Reis v. Ralls*, 250 Ga. 721, 723 (1) (301 SE2d 40) (1983) ("[I]t appears clear that in addition to a trademark, a trade name, along with the goodwill it represents, may be the subject of an Article 9 security interest.").

Here, Edible IP specifically pleaded that it is the only entity entitled to license the use of the trade name "Edible Arrangements"; that it licenses the use of that name to its various franchisees and affiliates, including both brick-and-mortar franchises and Internet-based retailers locally, nationally, and globally; and that its franchisees rely heavily on consumers seeking out their locations by name. Construing these factual allegations in favor of Edible IP for the purpose of analyzing Google's motion to dismiss, as we must, Edible IP has sufficiently alleged a property interest in the trade name "Edible Arrangements" and its associated goodwill within the meaning of OCGA § 51-10-6.

(ii) We turn now to the question of whether Google's actions constitute theft of that property interest as alleged by Edible IP, and to answer that question, we must first consider what rights the

10

owner of a trade name and the associated goodwill has to exclude others from using its trade name. "Georgia protects trade names by statute and by common law." *Diedrich v. Miller & Meier & Assocs.*, 254 Ga. 734, 736 (2) (334 SE2d 308) (1985). See also *Giant Mart Corp. v. Giant Discount Foods, Inc.*, 247 Ga. 775 (279 SE2d 683) (1981). Thus, in order to determine the contours of Edible IP's property right in its trade name, we must examine both Georgia statutory law and the common law.

Georgia statutes have long provided only limited protections to owners of trademarks and trade names. Notably, these statutory protections do not preclude a third party from any and all use of an owner's trademark or trade name. For example, in 1968, the General Assembly enacted the Uniform Deceptive Trade Practices Act, currently codified at OCGA § 10-1-370 et seq., as a source of relief for, among other things, the victim of trademark or trade name infringement. See Ga. L. 1968, p. 337, § 2. Relevant to our inquiry here, OCGA § 10-1-372 (a) defines a deceptive trade practice as one that:

11

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

. . .

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Other statutes protect against the deceptive use of another's trademark or trade name. OCGA § 23-2-55 provides that "[a]ny attempt to encroach upon the business of a trader or other person by the use of similar trademarks, names, or devices, *with the intention of deceiving and misleading the public*, is a fraud for which equity will grant relief." (Emphasis added.) See also *Giant Mart Corp.*, 247 Ga. at 776 (holding that relief under OCGA § 23-2-55 "depends upon a showing of intent to deceive[,]" which "may be presumed if encroachment is done with knowledge of prior right"). Similarly, OCGA § 10-1-453 provides:

Any firm, person, corporation, or association who shall use the name or seal of any other person, firm, corporation, or association, in and about the sale of goods or otherwise, not being authorized to use the same,

knowing that such use is unauthorized, *with intent to deceive the public* in the sale of goods, shall be guilty of a misdemeanor.

(Emphasis added.)[6]  Under each of these statutes, it is clear that trade names are only protected from use by others to the extent that such use is deceptive or there is a likelihood of confusion by the public.[7]

---

[6] We note that a claim for trademark dilution under OCGA § 10-1-451 (b) requires a "blurring" or "tarnishment" of the trademark to bring an actionable claim. *McHugh Fuller Law Group, PLLC v. PruittHealth, Inc.*, 300 Ga. 140, 144-46 (2) (794 SE2d 150) (2016). Edible IP does not allege that Google has diluted the Edible Arrangements trade name by using it in Google's keyword advertising program.

[7] We note that the General Assembly enacted OCGA § 16-9-93.1 in 1996, which, in pertinent part, makes it a crime for

> any person . . . knowingly to transmit any data through a computer network . . . if such data uses any . . . trade name, registered trademark, logo, legal or official seal, or copyrighted symbol . . . which would falsely state or imply that such person . . . has permission or is legally authorized to use [it] for such purpose when such permission or authorization has not been obtained. . . .

OCGA § 16-9-93.1 (a). See Ga. L. 1996, p. 1505, § 1. Shortly after its enactment, however, a federal court deemed the statute unconstitutional. See *American Civil Liberties Union of Ga. v. Miller*, 977 FSupp. 1228, 1233-35 (1) (N.D. Ga. 1997) (concluding that, because the statute criminalizes the use of trademarks and trade names regardless of the speaker's intent to deceive or whether deception actually occurs, the statute's language is not narrowly tailored to promote a compelling state interest; is overbroad and sweeps protected activity within its proscription; and is void for vagueness). Relying on *Miller*, Google argues that Edible IP's proposed construction of OCGA §§ 51-10-6 and 16-8-2 would render the civil theft statute unconstitutional in the same way as OCGA § 16-9-93.1 and that, under the canon of constitutional doubt, the civil theft

Here, Edible IP has not alleged that Google's use of the "Edible Arrangements" trade name in its keyword advertising program causes any confusion, and in fact, has disclaimed in the complaint that it is "seek[ing] any . . . relief for any consumer confusion." Thus, we see no basis in Georgia statutory law for Edible IP's claim that Google has appropriated the "Edible Arrangements" trade name simply by using it in Google's algorithms and keyword advertising programs.

The common law likewise does not provide a basis for Edible IP's civil theft claim. Under the common law, a cause of action based on the use of a trademark or trade name has also generally been predicated on either an intent to cause consumer confusion or the likelihood of creating confusion or misunderstanding. See, e.g., *McLean v. Fleming*, 96 U.S. 245, 251 (24 LE 828) (1877) ("[N]o trader can adopt a trade-mark, so resembling that of another trader, as

---

statute should be read to not criminalize the use of non-deceptive and non-confusing trade names in keyword searches. We need not reach that question, however, because we conclude below that Edible IP has failed to state a claim for civil theft of its trade name on other grounds.

14

that ordinary purchasers, buying with ordinary caution, are likely to be misled."); *McHugh Fuller Law Group, PLLC v. PruittHealth, Inc.*, 300 Ga. 140, 144 (2) (794 SE2d 150) (2016); *Reis*, 250 Ga. at 725 (2) (concluding that equity will enjoin use of another's trade name where "the buyers are knowingly using a confusingly similar name"); *Pearl Optical, Inc. v. Pearle Optical of Ga., Inc.*, 218 Ga. 701, 705 (3) (130 SE2d 223) (1963) (if the general public might be deceived and misled into confusing the two businesses, the result could dilute plaintiff's goodwill to the unjust enrichment of defendant); *Gano v. Gano*, 203 Ga. 637, 639 (47 SE2d 741) (1948) (liability existed where defendant copied trade name "for the purpose of deceiving the public into thinking that the businesses of the plaintiffs and the defendants were the same"); *Kay Jewelry Co. v. Kapiloff*, 204 Ga. 209, 213 (49 SE2d 19) (1948) ("The ultimate wrong under all these theories of relief is that there will be a confusion on the part of the public."). As this Court has explained, "[r]elief against unfair competition by the use of trade-names really rests on the deceit or fraud which the later comer into the field is

15

practicing upon the earlier comer and on the public." *Atlanta Paper Co. v. Jacksonville Paper Co.*, 184 Ga. 205, 212 (2) (190 SE 777) (1937). And,

> [u]nless it appears that there is or will probably be a deception of ordinary buyers and the general public into thinking that the goods or business of one is the business or goods of another, and thus bring about the sale of one man's goods as the goods of the other, the case is [damage without injury], for which no action lies.

Id. at 213 (2).

Other jurisdictions, considering infringement claims in various statutory contexts and under the common law, have reached this same conclusion, i.e., without consumer confusion, mere use of a trademark or trade name does not deprive the owner of the trademark or trade name and its associated goodwill. See, e.g., *Limitless Worldwide, LLC v. AdvoCare Intl., LP*, 926 FSupp.2d 1248, 1254 (D. Utah 2013) (declining to issue injunctive relief to protect defendant's goodwill where there was no likelihood of confusion from the plaintiff's use of the word "Spark"); *Minnesota Pet-Breeders v. Schell & Kampeter*, 843 FSupp. 506, 518 (D. Minn.

1993) ("The touchstone of proof of loss of goodwill damages is consumer confusion — if *consumers* are not *confused*[,] . . . the complaining party cannot be said to have suffered compensable loss of any goodwill . . . ." (emphasis in original)); *Union Carbide Corp. v. Fred Meyer, Inc.*, 619 FSupp. 1028, 1035 (D. Ore. 1985) ("No loss of reputation, trade, or good will . . . takes place in the absence of consumer confusion."). Cf. *T-Mobile US, Inc. v. Aio Wireless LLC*, 991 FSupp.2d 888, 929 (S.D. Tex. 2014) (monetary damages not sufficient to remedy the loss of future goodwill where plaintiff established likelihood of consumer confusion).

And although Edible IP disclaims asserting any federal trademark claim, a review of federal trademark law is instructive on the contours of a third party's right to use a trade name. Like Georgia statutory law and the common law, federal trademark law offers only limited trademark and trade name protection.[8] For

---

[8] See 15 USC § 1115 (b) (1)-(9) (listing defenses available to an infringement claim, including subpart (b) (4): "[t]hat the use of the name . . . is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin").

17

example, the doctrine of fair use permits reference to a competitor's trade name in an advertisement. See *Saxlehner v. Wagner*, 216 U.S. 375, 380-81 (30 SCt 298, 54 LE 525) (1910) (seller can use competitor's name in advertising to explain its product was imitation of competitor's); *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F3d 1171, 1180 (9th Cir. 2010) ("[T]he wholesale prohibition of nominative use in [trade names] . . . would be unfair to merchants seeking to communicate the nature of the service or product offered . . . [and] to consumers, who would be deprived of an increasingly important means of receiving such information."); *Intl. Stamp Art, Inc. v. United States Postal Service*, 456 F3d 1270, 1277 (11th Cir. 2006) (no trademark infringement where defendant's use of the mark did "not attempt to capitalize on consumer confusion" and did not "implicate the source-identification function that is the purpose of trademark" (citation and punctuation omitted)). See also *Smith v. Chanel, Inc.*, 402 F2d 562, 567-68 (9th Cir. 1968) (allowing perfume maker to advertise that its scent smells like Chanel No. 5); *Delta Air Lines, Inc. v. Wunder*, Case No. 1:13-CV-3388-MHC, 2015 U.S. Dist.

LEXIS 199749, at *32-33 (N.D. Ga. Dec. 15, 2015) ("[O]ne can use another's mark truthfully to identify another's goods or services in order to describe or compare its product . . . . This right to use a mark to identify the marketholder's products—a nominative use—however, is limited in that the use cannot be one that creates a likelihood of confusion . . . ." (citation and punctuation omitted)); *McHugh Fuller Law Group*, 300 Ga. at 148 (2) ("[T]rademark law does not impose a blanket prohibition on referencing a trademarked name in advertising. Indeed, it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference, or any other such purpose without using the mark." (citation and punctuation omitted)).

In summary, trademark law recognizes a distinction between the illegitimate misappropriation of a business's goodwill and legitimate comparative advertising and, therefore, permits the use of trade names as long as referencing other brand names does not

confuse consumers and is not deceptive.[9] Indeed, if liability for using a trademark or trade name could be imposed without the "likelihood of confusion" test, as Edible IP urges, then "over 100 years of trademark law would be discarded." J. Thomas McCarthy, Conversion of a Trademark, 4 McCarthy on Trademarks and Unfair Competition, § 25:9.50 (5th ed. 2019) (hereinafter "McCarthy") (explaining why "the tort of 'conversion' should not be used in ordinary trademark infringement cases as a shortcut around the trademark law's standards of protection"). We see no reason to extend civil theft in Georgia to encompass the mere use of a trade name, without implicating consumer confusion, when doing so

---

[9] A federal trademark infringement claim is also predicated on the likelihood of consumer confusion. The Eleventh Circuit, for example, employs a seven-factor test to analyze the likelihood of confusion:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's goodwill; and (7) the existence of actual confusion in the consuming public.

*Delta Air Lines, Inc.*, 2015 U.S. Dist. LEXIS 199749 at *25-26 (citation and punctuation omitted).

would subvert Georgia trademark law, federal trademark law, and the common law of trademark infringement.

Edible IP claims that it has the absolute right to control the use of its trade name and associated goodwill, but the cases Edible IP points to for this proposition are inapplicable here. For example, in *Department of Transportation v. Arnold*, 243 Ga. App. 15 (530 SE2d 767) (2000), the Court of Appeals held that the government was required to pay a landowner for the goodwill associated with his property taken by eminent domain. See id. at 17 (1). This case does not aid Edible IP, as there is no allegation here of a physical taking associated with its goodwill claim. Edible IP also points to *Martin Luther King, Jr., Center for Social Change, Inc. v. American Heritage Products, Inc.*, 250 Ga. 135 (296 SE2d 697) (1982), in which this Court held that Martin Luther King, Jr.'s heirs are entitled to protect his "name and likeness" from those who would appropriate it "without consent and for financial gain." Id. at 141-42 (1) (recognizing common law right to prevent exploitation of person's image for profit as "one of preventing unjust enrichment by the theft

of good will" (citation and punctuation omitted)). But, the intangible property at issue in that case was a *natural person's* right to publicize his name and likeness, which is also a kind of invasion of privacy claim, and is a right that is distinct from those trade name rights extended to a corporation such as Edible IP. See id. at 138-42 (1) (analyzing right to publicity as deriving from a natural person's right to privacy); cf. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (IV) (70 SCt 357, 94 LE 401) (1950) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy."); *Bd. of Regents of the Univ. System of Ga. v. Atlanta Journal & Atlanta Constitution*, 259 Ga. 214, 217 (4) (b) (378 SE2d 305) (1989) (distinguishing between a personal *right* to privacy and a corporate *preference* for privacy).

Edible IP also argues, citing *Williams v. National Auto Sales, Inc.*, 287 Ga. App. 283 (651 SE2d 194) (2007), that "an unauthorized sale of the property is itself an unlawful exercise of dominion."[10] Id.

---

[10] In *Williams*, a car owner sued a dealership and its employee for conversion and a variety of other claims after the dealership repossessed the owner's car and sold it to a third party. See 287 Ga. App. at 283.

at 286 (1). Although this principle is generally true, this argument inaccurately presupposes that Google has actually sold any of Edible IP's property versus using the "Edible Arrangements" trade name in selling Google's own advertising.[11]

*An-Hung Yao v. State*, 975 NE2d 1273 (Ind. 2012), is likewise distinguishable. In *An-Hung Yao*, the defendants were charged with theft, among other things, for selling "airsoft guns" that were replicas of real weapons made by a firearms manufacturer; the theft was alleged to be of the "trademarks and/or markings or symbols of identification." Id. at 1280 (citation and punctuation omitted). The

---

[11] Edible IP also points to several cases that it alleges found a deprivation of property absent any physical taking. See, e.g., *Levenson v. Word*, 294 Ga. App. 104, 107-08 (1) (668 SE2d 763) (2008) (addressing assets of a decedent's estate); *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 358-59 (2) (551 SE2d 765) (2001) (charges on a phone bill); *Jones v. Turner Broadcasting System*, 193 Ga. App. 768, 769 (389 SE2d 9) (1989) (business plan for a television show); *Brown v. State*, 177 Ga. App. 284, 290-91 (6) (339 SE2d 332) (1985) (theft of services); *State v. Cecil*, Case No. 35979-1-II, 2008 Wash. App. LEXIS 1400, at *18-19 (Wash. Ct. App. June 17, 2008) (affirming theft conviction where defendant copied credit card number, social security number, and PIN); *State v. Nelson*, 842 A2d 83, 86 (N.H. 2004) (scanned copies of photographs amounted to theft). Again, however, these cases are readily distinguishable, as they either do not involve the alleged theft of trade names or clearly involve consumer confusion, a claim Edible IP has expressly abandoned.

defendants argued that it was "not theoretically possible" to exert unauthorized control over a third party's trademark and that any such unauthorized use could only be remedied by a civil trademark infringement action. Id. at 1281-82 (punctuation omitted). After examining the applicable theft statute, the Indiana Supreme Court held that copying the distinct look of the weapon and using the trademark could, on a motion to dismiss the charges, be considered exerting unauthorized control over the trademark or at least "encumber" the trademark. Id. Here, however, unlike in *An-Hung Yao*, Edible IP does not allege that Google has replicated the goods and services Edible IP provides by using the "Edible Arrangements" trade name, instead alleging that the trade name was used in a separate and distinct service offered by Google through its keyword advertising program.

In sum, given Edible IP's express disavowal of the element of consumer confusion in the complaint, it cannot state a claim for civil theft arising from the use of its trade name and associated goodwill. Accordingly, the trial court did not err in granting Google's motion

to dismiss Edible IP's claim for civil theft.

(b) *Conversion.*

In Count 2 of its complaint, Edible IP asserts a claim for conversion under OCGA § 51-10-1, which provides that "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." The intentional tort of conversion, we have explained, "consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Decatur Auto Center, Inc. v. Wachovia Bank, N.A.*, 276 Ga. 817, 819 (583 SE2d 6) (2003) (citation and punctuation omitted).

Although Georgia law may provide relief for the conversion of certain intangible property,[12] we have never extended that tort to

---

[12] See *Trotman v. Velociteach Project Mgmt., LLC*, 311 Ga. App. 208, 210-11 (2) (a) (715 SE2d 449) (2011) (affirming grant of injunction where jury found defendant had violated the Uniform Deceptive Trade Practices Act in converting course materials and other intellectual property stored on laptop).

claims based on the mere use of a trademark or on trade name infringement, and we decline to do so now. Again, the cases Edible IP relies upon are readily distinguishable. For example, in *English & Sons, Inc. v. Straw Hat Restaurants, Inc.*, 176 FSupp.3d 904 (N.D. Cal. 2016), the court concluded that the plaintiffs had "converted" the defendant's trademark and other intellectual property by wrongfully registering ownership of the trademark with the U.S. Patent and Trademark Office — not just by simple use.[13] See id. at 923 (2).

Other courts have likewise rejected attempts to expand the tort of conversion to encompass the type of intangible property traditionally protected within the scope of trademark law. See, e.g., *Ortega v. Burgos*, Case No. 12-CV-05421, 2014 U.S. Dist. LEXIS 70457, at *3 (E.D. N.Y. May 22, 2014) (dismissing trademark

___

[13] *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522 (107 SCt 2971, 97 LE2d 427) (1987), another case on which Edible IP relies, was a highly fact-specific ruling involving an act of Congress that granted the United States Olympic Committee unique statutory rights that the United States Supreme Court expressly recognized were different "from the normal trademark protection." Id. at 531 (III). Of note, under that act, the Olympic Committee was not required to prove that a contested use was likely to cause confusion. See id.

conversion claim because "[n]ot only has this Court been unable to find any authority that recognizes trademark conversion, the leading treatise on trademark law states that, '€very court to consider such a claim has rejected it'" (citation omitted)). See also 4 McCarthy, supra, § 25:9.50 ("Occasionally, a trademark owner will allege, either along with or instead of a traditional infringement claim, that its mark has been 'converted' by defendant. Every court to consider such a claim has rejected it. The author agrees that the tort of 'conversion' should not be stretched and deformed to substitute for the traditional law of trademark infringement.").

Accordingly, we cannot say that the trial court erred in concluding that Edible IP had failed to state a claim for conversion.

(c) *Money Had and Received*.

In Count 3 of its complaint, Edible IP asserts a claim for money had and received, alleging that Google currently holds a sum of money belonging to Edible IP. The common law action for money had and received "is founded upon the equitable principle that no one ought to unjustly enrich himself at the expense of another[.]"

*Sentinel Offender Services, LLC v. Glover*, 296 Ga. 315, 331 (4) (a)

(766 SE2d 456) (2014) (citation and punctuation omitted). This

action "is maintainable in all cases where one has received money

under such circumstances that in equity and good conscience he

ought not to retain it." Id. (citation and punctuation omitted).

Edible IP's claim for money had and received again relies on its

unavailing assertion that, rather than selling advertising space,

Google is in essence selling Edible IP's trade name and illegally

profiting from it. And, despite Edible IP's insistence that our courts

have previously held that "the fact that [money] was received from

a third person will not affect [a defendant's] liability,"[14] this holding

does not change the futility of Edible IP's claim for money had and

received because Edible IP has no claim to the profits that Google

has earned by selling advertising. Accordingly, for this reason and

for the reasons discussed above in Division 1 (a) and (b), Edible IP

---

[14] *Haugabook v. Crisler*, 297 Ga. App. 428, 432 (677 SE2d 355) (2009) (citation and punctuation omitted). See also id. ("[I]t is immaterial how the money may have come into the defendant's hands, . . . if, in equity and good conscience, he is not entitled to hold it against the true owner." (citation and punctuation omitted)).

cannot, as a matter of law, show that it is entitled to profits that Google earns through its keyword advertising program (even if the program uses the trade name "Edible Arrangements") or that Google has been unjustly enriched at Edible IP's expense, and this claim likewise fails.

(d) *Georgia's RICO Act*.

In the final count of its complaint, Edible IP asserts that Google has violated Georgia's RICO Act, OCGA § 16-14-1 et seq.,[15] by "obtaining . . . an interest in or control of personal property, including but not limited to money, through a pattern of racketeering activity." Specifically, Edible IP asserts that Google's racketeering activity includes the theft of Edible IP's rights in its trade name.[16] Thus, this claim requires Edible IP to successfully plead the underlying claim of theft, which we have determined that

---

[15] OCGA § 16-14-4 (a) states that "[i]t shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."

[16] The RICO Act defines "racketeering activity," which includes "[t]heft in violation of Article 1 of Chapter 8 of this title[.]" OCGA § 16-14-3 (5) (A) (xii).

it has not done here. Accordingly, Edible IP's RICO claim also fails. Cf. *Bowden v. Medical Center, Inc.,* 309 Ga. 188, 202-03 (3) (845 SE2d 555) (2020) ("However, because all of the alleged offenses depend on proving that [the defendant] intentionally misrepresented the amount it claimed to be reasonable charges in filing the liens, and because we have already determined that the filing of liens consistent with chargemaster rates in this case does not constitute fraudulent activity, the RICO claims also fail.").

2. Because we conclude that the trial court did not err in granting Google's motion to dismiss on the ground that Edible IP has failed to state a cognizable claim for relief, we need not address Edible IP's remaining enumerations of error challenging the trial court's alternative grounds for dismissing the complaint. Because the Court of Appeals correctly upheld the trial court's dismissal, we affirm that judgment.

*Judgment affirmed. All the Justices concur, except Peterson, J., disqualified, and LaGrua, J., not participating.*

30

Decided February 15, 2022.

Certiorari to the Court of Appeals of Georgia — 358 Ga. App. 218.

*Bondurant Mixson & Elmore, Ronan P. Doherty, Jason J. Carter, Patrick C. Fagan, Solesse L. Altman; Mahaffey Pickens Tucker, Steven A. Pickens, Andy D. Stancil*, for appellant.

*Bryan Cave Leighton Paisner, Eric P. Schroeder, Brian M. Underwood, Jr.; Quinn Emanuel Urquhart & Sullivan, Margret M. Caruso*, for appellee.

*The Hadden Law Firm, John D. Hadden; Broughton Law, Bret S. Moore; Latham & Watkins, Sarang V. Damle, Todd W. Beauchamp, Carolyn Homer, Rachel S. Horn*, amici curiae.